## IN THE UNITED STATES COURT OF THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:25-cv-14319** |
| | ) | |
| **v.** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **THOMAS C. JONES JR., et. al,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff, JANE DOE ("JANE" or "Plaintiff"), by and through her attorneys, SPITZER LAW P.C., brings this multi-count complaint against Defendants, THOMAS C. JONES JR. ("Jones"), JOSEPH SARNELLO ("Sarnello"), ADRIAN ALVAREZ ("Alvarez"), KEGAN CORCORAN-SIPE ("Corcoran-Sipe")(as a cumulative group, "Tortfeasors") and THOMAS C. JONES SR., JENNIFER JONES in their capacity as insured parties of the home where many of the torts discussed in this complaint occurred (together "Homeowners"), for violations of multiple federal and state statutes prohibiting the non-consensual recording and dissemination of videos and photos depicting sexual activity across state lines as well as the common law torts of sexual battery, intentional infliction of emotional distress, negligent infliction of emotional distress, civil conspiracy, intrusion upon seclusion, and premises liability. In support of her Complaint, Plaintiff state as follows:

## INTRODUCTION

Ms. Jane Doe is a twenty-six (26) year old woman who had her world turned upside down on July 23, 2024, when she learned that her high-school sweetheart, Jones, was secretly filming and disseminating their sexual encounters <u>without her consent</u> to Co-Tortfeasors

Sarnello, Alvarez, and Corcoran-Sipe over the period of <u>years</u>. When she was investigating Jones's grotesque behavior, she was horrified to learn that Jones also recorded himself raping her while unconscious, and then bragging about it to Sarnello via text message. The evidence in this case will reveal that Jones, along with Sarnello, Alvarez, and Corcoran-Sipe engaged in a multi-state conspiracy where the Tortfeasors planned to and actually did exchange photos and videos of themselves engaging in sexual activity with their respective partners, female friends, and other unidentified women through text and Snapchat messages in violation of both federal and state anti-recording and dissemination statutes and other common law torts. The Tortfeasors acted intently with knowledge and/or reckless disregard that their actions would cause Plaintiff extreme emotional distress and other tortious injuries. They acted with a purpose to receive sexual gratification at the expense of their victims.

Upon information and belief, at least Jones uploaded the violating photos and videos to Only Fans to receive financial compensation. Tortfeasors' unconscionable actions led Jane Doe and other victims, Jessica Doe ("Jessica"), and Betty Doe ("Betty") to incur extreme and unfathomable emotional distress, actual damages in terms of loss of consortium to living expenses, and actual damages for hiring attorneys and undergoing intensive therapy to cope with the pain that Tortfeasors caused them. Punitive damages in this matter are proper as Plaintiff Jane Doe is forced to rebuild her life after Defendants' despicable actions, while Jones, Sarnello, Alvarez, and Corcoran-Sipe live freely without punishment carrying on their life unaffected by the vile things they did to Jane, Betty and Jessica.

## **<u>PARTIES</u>**

1.      Plaintiff Jane Doe is a twenty-six (26) year old woman. She is a current resident of Westminster, Colorado and has lived in Colorado since July 2023. She is employed as an

account executive at a technology company. During the events referenced in this Complaint, Ms. Jane Doe was a resident of Colorado and a previous resident of her home state, Illinois. Jane and Jones were in a romantic relationship since they graduated from high school in 2017 until the discovery of Jones's tortious and criminal conduct on or about July 23, 2024. Plaintiff Jane Doe is proceeding with a use of a pseudonym as is her right pursuant to § 1309 of the Violence Against Women Act, 740 ILCS 190/20, and C.R.S. 13-21-1405.

2.     Thomas C. Jones, Jr. is a twenty-six (26) year old man. He is a current resident of Raleigh, North Carolina. Upon information and belief, Jones is employed as a nurse. Jones was a resident of both Colorado and Illinois during the events discussed in this Complaint. He fled the state of Colorado on or about August 1, 2024, while criminal charges based on Jane's allegations were pending against him. Jones was the ring-leader of the Tortfeasors' conspiracy and tortious actions that underlie each count of this Complaint. Jones currently resides with Co-Tortfeasor Corcoran-Sipe.

3.     Upon information and belief, Joe Sarnello is a twenty-seven (27) year old man. He is a current resident of Arizona, but is considered domiciled in the western suburbs of Chicago, Illinois, where he attended high school and where his parents still reside. Sarnello and Jones were friends from college where they were both on the Cornell College baseball team. Sarnello was in a previous romantic relationship with Jessica Doe. Sarnello was a resident of Salt Lake City, Utah, during the events discussed in this Complaint. Sarnello was Jones's primary co-conspirator of the conspiracy to commit the tortious actions that underlie each count of this Complaint.

4.     Upon information and belief Kegan Corcoran-Sipe is a twenty-seven (27) year old man. He is a current resident of Raleigh, North Carolina where he lives with Jones. Corcoran-

Sipe—like Jones, Sarnello, and Alvarez—was also a member of the Cornell College baseball team and also a member of the Tortfeasors' conspiracy to commit the tortious actions that underlie each count of this Complaint. He lived in or around Seattle, Washington during the events that give rise to this Complaint.

5.      Upon information and belief Adrian Alvarez is a twenty-seven (27) year old man. He is a current resident of or near Anaheim, California. Alvarez—like Jones, Sarnello, and Corcoran-Sipe—was also a member of the Cornell College baseball team and also a member of the Tortfeasors' conspiracy to commit the tortious actions that underlie each count of this Complaint.

6.      Thomas C. Jones Sr. and Jennifer Jones, are Defendant Jones's father and mother, respectively ("Homeowners"). During the time of the events giving rise to this Complaint, Homeowners owned a home in Lake County, Illinois which held homeowners liability insurance. This home was the site for many of the tortious actions giving rise to this Complaint.

7.      Victim Jessica Doe was a long-term romantic partner of Sarnello.

8.      Victim Betty Doe is twenty-seven (27) year old woman ("Betty"). She is friends with Plaintiff Jane Doe and has been since June 2021.

**JURISDICTION**

9.      Federal question jurisdiction over the Plaintiff's Violence Against Women Act claims is proper per 28 U.S.C. § 1331.

10.     Supplemental jurisdiction over Plaintiff Jane Doe's Illinois, Colorado and California statutory claims is proper per on 28 U.S.C. § 1367, in that the state law claims are so related to the federal claims that they form part of the same case or controversy.

11. Supplemental jurisdiction over the Plaintiff's common law tort claims is proper per 28 U.S.C. § 1367, in that the state common law claims are so related to the federal claims that they form part of the same case or controversy.

12. This Court holds specific personal jurisdiction over all Defendants—the Tortfeasors and the Homeowners—as the majority of the torts occurred in Illinois, the Homeowners and Jones were former Illinois residents at the time of the torts, and Sarnello will likely found to be "domiciled" in Illinois. Moreover, some of the torts described in this Complaint were directed at then-Illinois resident, Jane. In other words, Tortfeasors purposefully availed themselves to specific personal jurisdiction in Illinois when they conspired to and actually sent and received tortious material involving Plaintiff which originated in Illinois. Moreover, Jones and Sarnello submit to Illinois specific personal jurisdiction per 735 ILCS 5/2-209 when they committed the various torts discussed throughout this Complaint, in Illinois.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

## FACTS

### PLAINTIFF JANE DOE'S RELATIONSHIP WITH JONES

14. Jane and Jones were high school sweethearts.

15. They grew up in Lake County, Illinois and attended high school there, together.

16. They graduated in 2017.

17. Their dating relationship began on or about March 2, 2016, when they were both sixteen (16) years old and continued for over 10 years.

18.     They both attended Cornell College in Mount Vernon, Iowa. They both graduated with baccalaureate degrees from this college in May 2021.

19.     Jones was a member of the Cornell College baseball team for all 4 years of his undergraduate studies.

20.     Jane and Jones moved back into their respective parents' homes in Lake County, Illinois after they graduated from college.

21.     They lived in their respective parents' homes from May 2021 until Jane moved out in February 2023 and Jones moved out in July 2023.

22.     Jane and Jones decided as a couple to start a new life in Colorado, and in July 2023 they moved together and rented an apartment in Westminster, Colorado, a suburb of Denver, Colorado.

23.     Jane and Jones often returned to Lake County, Illinois between 2023-2024 to visit family and friends. They stayed at their respective parents' homes during these visits.

24.     Between the years 2021-2024 Jane and Jones did quite a bit of traveling together as a young couple, they visited:

   a.  Iowa to visit friends multiple times: November 12-14, 2021; October 20-23, 2022; and July 5-8, 2024.

   b.  Mexico for vacation between May 23-30, 2023.

   c.  Lake County, Illinois from their home in Colorado on: June 1-5, 2023; July 1-5, 2023; December 20-27, 2023; March 13-17, 2024, and June 30-July 4, 2024.

   d.  Chicago, Illinois on January 14, 2023 – Jane and Jones stayed at Springhill Suites by Marriot hotel in Chicago's Chinatown for the evening after seeing a concert. Jones raped Doe that night, details of this sexual assault are discussed below.

25. Jane and Jones contemplated marriage.

26. Jones began saving for an engagement ring and their respective families anticipated they would be married.

27. Jane and Jones became pregnant in the spring before the events in this Complaint were discovered. Jane lost the baby soon after and suffered a painful medically required abortion.

28. Jane and Jones broke up on July 24, 2024 the day after Jane discovered Jones had been secretly recording their sexual encounters without her knowledge or consent—including the instance of rape discussed below—and disseminating them to the other Tortfeasors, again without her knowledge or consent.

29. Jane reported Jones's criminal activity to the Westminster Police Department of Westminster, Colorado on the same night. Jones was arrested on July 25, 2024.

30. Jane sought and received a plenary order of protection against Jones for the conduct alleged in this Complaint. It remains active. **Exhibit 1.**

<u>JONES'S RELATIONSHIP WITH CO-TORTFEASORS</u>

31. Like Jane and Jones, Sarnello, Alvarez and Corcoran-Sipe also attended Cornell College.

32. Sarnello, Alvarez, and Corcoran-Sipe were also members of the baseball team with Jones.

33. Jones and Corcoran-Sipe were roommates between 2020-2021. Jones and Corcoran-Sipe are presently roommates living in Raleigh, North Carolina.

34. In other words, the Tortfeasors were and remain close friends.

35. Until the discovery of the Tortfeasors' misconduct discussed in this Complaint, Jane also believe the Tortfeasors were her friends.

36. Upon information and belief, the Jones, Corcoran-Sipe and Alvarez created a group chat text/iMessage chain using their respective cell phone devices known as a "Trio" ("Trio Group Chat").

37. The Trio Group Chat was used by its members Jones, Corcoran-Sipe and Alvarez ("Trio Members") as a quick and efficient way to communicate via text message.

38. The Trio Members used the Trio Group Chat during their time at college through at least Jane's discovery of their misconduct, on July 23, 2024.

39. Jones and Sarnello, like the Trio Members, also used text/iMessage to regularly communicate during their time at college through at least Jane's discovery of their misconduct on July 23, 2024.

40. The Tortfeasors also used the social media platform Snapchat, to keep in touch.

41. Snapchat is a social media platform that allows users to share photos, videos, and messages to certain recipients that then disappear after a certain amount of time, if the content is not otherwise downloaded and saved.

42. The Trio Members' Snapchat group was also called Trio—likely to match their text message group chat ("Trio Snapchat").

43. Sarnello and Jones also had their own snapchat thread to exchange content, as discussed below.

44. The Trio Members created and maintained at least two different mediums of communication to be in constant contact with each other.

45. Sarnello and Jones created and maintained at least two different mediums of communication to be in constant contact with each other.

<u>DOE'S JULY 23, 2024, DISCOVERY</u>

46.      Jane discovered the Tortfeasors vile misconduct which underlie every count of this complaint on July 23, 2024.

47.      On that day, while Jones was at work, and Jane remained in the couple's apartment, Jane accessed the laptop she shared with Jones for unrelated reasons.

48.      When she did, she saw a notification from the Trio Group Chat pop-up on the screen.[1]

49.      Intrigued, Jane clicked on the message and what she found was unconscionable.

50.      The Trio Group Chat was not an innocent chat between friends; instead, it was an electronic cesspool where the Trio Members exchanged illicitly obtained photos and videos of their sexual experiences with their respective partners and other unknown women, and where they discussed this misconduct, together.

51.      One of the photos Jane found in the Trio Group Chat depicted Jane and Betty.

52.      Jane learned in reading the Trio Group Chat and the text message exchanges between Jones and Sarnello, that her partner, Jones, had secretly recorded at least <u>6 videos</u> of them having sexual intercourse, **<u>one of those videos depicted her rape</u>**, and shared those videos, as well as two other videos, with the Tortfeasors for the groups' sexual gratification at the cost of her personhood.

53.      Jane also learned that Sarnello shared content of his and Jessica's sexual activity with Jones.

---

[1]      Jones had an i-phone that was synced with a macbook that Jane and he shared.

54.     The Tortfeasors would then review the content, upload/download to/from their devices and upload to Snapchat (into both groups) for safekeeping without the women in their life being any wiser.

55.     Jane printed out evidence of these communications and confronted Jones with it the next morning. **Exhibit 2**.

56.     Jane immediately contacted Jessica and Betty to alert them of her findings.

57.     Jane and Jessica ended their relationships with Jones and Sarnello, respectively, later that day.

<u>TORTFEASORS' VILE CONSPIRACY AND MISCONDUCT</u>

58.     In the course of her investigation, Jane learned that Jones shared the following content with the Tortfeasors, both through the Trio Group Chat/Trio Snapchat and to some of the Tortfeasors individually, that were then shared between themselves and/or to the wider group.

59.     A detailed description of each piece of content follows.

VIDEO 1

60.     Video 1 depicts Jane and Jones engaging in sexual intercourse in a hotel room in Burlington, Iowa, while the couple were in town at a mutual friend's wedding.

61.     Jones, knowingly and with a purpose to injure Jane, secretly recorded this video without Jane's knowledge or consent.

62.     Jones never asked Jane if she would consent to film this encounter, nor did he ask her to share the video he filmed.

63.     Jane did not see the camera; Jones hid it away from her view.

64.     VIDEO 1 depicts Jones hiding the camera away from Jane's view, demonstrating her lack of knowledge or consent.

65.     Jane discovered this video on July 23, 2024, when she discovered Jones's other tortious actions.

66.     Jones distributed this video to Sarnello[2] on or about July 8, 2024, via text message, see below.



67.     Upon information and belief, Sarnello was located in Salt Lake City, Utah when he received this video.

---

[2]     The last four digits of SARNELLO's cell phone number are -4125.

68.     Sarnello knew or should have known that this video was recorded without Jane's knowledge or consent as was custom in the Tortfeasors' conspiracy, and the fact that Jane is not looking into the camera.

69.     Either Sarnello or Jones then sent Video 1 to Snapchat for storage and/or the Tortfeasors' joint viewing.

70.     Upon information and belief, Alvarez and Corcoran-Sipe accessed and viewed Video 1.

71.     Upon information and belief, all of the Tortfeasors disseminated Video 1 between themselves.

72.     Sarnello, Alvarez and Corcoran-Sipe knew or should have known that Jane did not consent to this video being recorded or disseminated, as was custom in the Tortfeasors' conspiracy, and the fact that Jane is not looking into the camera.

73.     Jane is identifiable in VIDEO 1 by her long, red hair and body.

74.     Jane is identifiable in VIDEO 1 because it was originally disseminated by her then long-term partner, Jones.

75.     In other words, individuals who know Jane personally would easily be able to identify Jane as the woman in the video.

76.     Sarnello did identify Jane in the video.

77.     Sarnello's malicious intent is noted by his own words. He thanks Jones for the video and calmly asks "how was the wedding" as if unbothered by the fact that he just received a video depicting his two friends engaged in sexual activity, to his device.

78.     All of the Tortfeasors knowingly or recklessly viewed and engaged with and disseminated Video 1 for the sole purpose of causing Jane extreme emotional distress and other tortious injuries, and in pursuant of their own sexual gratification.

VIDEO 2

79.     Video 2 depicts Jane and Jones engaging in sexual intercourse at the Homeowner's residence while the couple was visiting their respective families in Lake County, Illinois.

80.     Jones did not ask Jane for consent to disseminate this video.

81.     Jane discovered this video had been shared with third parties on July 23, 2024, when she discovered Jones's other tortious actions.

82.     Jones sent this video to Sarnello on June 25, 2021, via text message, as seen below:



83.     Upon information and belief, Sarnello was located in Salt Lake City, Utah when he received this video.

84.     Sarnello knew or should have known that this video was disseminated without Jane's knowledge or consent, as was custom in the Tortfeasors' conspiracy and based on the fact that Jane never sent him this video, or any video, for his viewing.

85.     Sarnello's knowledge and tortious intent is demonstrated by his own words, he says "oh damn only a minute and a half cmon man haha".

86.     Jones's malicious intent to harm Jane is demonstrated by his own words "I nut quick what can I say" demonstrating a complete and utter disregard to Jane's privacy or personhood.

14

87.    Upon information and belief, VIDEO 2 was sent by Jones or Sarnello to Snapchat to stored and from Jones to the Trio Snapchat be viewed by Alvarez and Corcoran-Sipe.

88.    Upon information and belief Alvarez and Corcoran-Sipe accessed and viewed VIDEO 2.

89.    Upon information and belief, all of the Tortfeasors disseminated Video 2 between themselves.

90.    Alvarez and Corcoran-Sipe knew or should have known that Jane did not consent to this video being disseminated, as was custom in the Tortfeasors' conspiracy.

91.    Jane is identifiable in VIDEO 2 by her body, her face, and the location of where the video is taken, Jones's childhood home.

92.    Jane is identifiable in VIDEO 2 by the fact that the video was recorded and disseminated initially by her long term partner, Jones.

93.    In other words, individuals who know Jane personally would easily be able to identify Jane as the woman in the video.

94.    All of the Tortfeasors knew Jane personally.

95.    All of the Tortfeasors knowingly and/or recklessly viewed and engaged with and disseminated Video 2 for the sole purpose to cause Jane extreme emotional distress and other tortious injuries, and in pursuant of their own sexual gratification.

VIDEO 3

96.    Video 3 depicts Jane and Jones engaging in sexual intercourse in her bedroom located at her parents' home in Lake County, Illinois.

97.    Jones knowingly and with a purpose to injure Jane secretly recorded this video without Jane's knowledge or consent.

98. VIDEO 3 depicts Jones recording the video of the couple in the mirror, with Jane's face turned away. In other words, Jane did not know or consent to the fact that Jones filmed this encounter.

99. Jones neither asked for Jane's consent to record the encounter, nor did he ask for her consent to disseminate the video.

100. Jane discovered this video on July 23, 2024, when she discovered Jones's other tortious actions.

101. Jones distributed this video to Sarnello via text message, seen below:



16

102. Upon information and belief, Sarnello was located in Salt Lake City, UT when he received this video.

103. Sarnello knew or should have known that this video was recorded without Jane's knowledge or consent and with intent to injure Jane, by his own words.

104. As seen in the photo above and the following one below, Jones and Sarnello had graphic conversations about how Jones set up the camera and why the video was blurry.



105.    Jones notes that the video was obscured because "[JANE] was in the way" and he was "too worried about the vid" to make sure it was propped well for Sarnello's viewing pleasure.

106.    Jones expresses his disappointment with his camera work when he says "nah it had to have sent blurry."

107.    Upon information and belief, VIDEO 3 was sent by Jones to the Trio Snapchat to be viewed by Alvarez and Corcoran-Sipe.

108.    Upon information and belief, Alvarez and Corcoran-Sipe accessed and viewed VIDEO 3.

109.    Upon information and belief, VIDEO 3 was sent by Sarnello or Jones to the Snapchat thread they shared for safekeeping.

110.    Upon information and belief, all of the Tortfeasors disseminated VIDEO 3 between themselves and with other individuals.

111.    Sarnello, Alvarez and Corcoran-Sipe knew or should have known that Jane did not consent to this video being recorded or disseminated, as was custom in the Tortfeasors' conspiracy, and the fact that the video records Jane in the mirror, outside of the view of the camera.

112.    Jane is identifiable in VIDEO 3 by her face and body, as seen in the mirror video.

113.    Jane is identifiable in VIDEO 3 by the fact that it was initially disseminated by Jones, her former partner.

114.    In other words, individuals who know Jane personally would easily be able to identify Jane as the woman in the video.

115.    All of the Tortfeasors knew Jane personally.

18

116.     All of the Tortfeasors viewed and engaged with and disseminated Video 3 for the sole purpose of causing Jane extreme emotional distress and other tortious injuries, and in pursuant of their own sexual gratification.

PHOTO 1

117.     Photo 1 depicts Jane taking a photo of herself for Jones's private viewing.

118.     Jones knowingly and with a purpose to injure Jane disseminated this photo to Sarnello without Jane's knowledge or consent.

119.     Jane discovered Jones sent Sarnello and the Trio Snapchat this photo on July 23, 2024, when she discovered Jones's other tortious actions. Text messages between Jones and Sarnello are seen below:



120. Based on their own words, Jones and/or Sarnello transferred Photo 1 to Snapchat for later viewing in furtherance of their civil conspiracy.

121. Sarnello and Jones's common practice of transferring content of Jane, Jessica and Betty is seen by Sarnello's own words: "I'm going to have to **transfer** them to Snap."

122. Jones expressed his agreement and continued participation in the conspiracy when he responds, "Hahaha I can do that for you…I'll snap."

123. Upon information and belief, Jones also uploaded this photo to the Trio Snapchat to be viewed by Alvarez and Corcoran-Supe in furtherance of the Tortfeasors' civil conspiracy.

124. Upon information and belief, Alvarez and Corcoran-Sipe accessed and viewed PHOTO 1.

125. Upon information and belief, all of the Tortfeasors disseminated PHOTO 1 between themselves.

126. Sarnello. Alvarez and Corcoran-Sipe knew or should have known that Jane did not consent to this photo being disseminated, as was custom in the conspiracy and the fact that Jane did not send this photo to them.

127. Jane is identifiable in PHOTO 1 by her face and body.

128. In other words, individuals who know Jane personally would easily be able to identify Jane as the woman in the photo.

129. All of the Tortfeasors knew Jane personally.

130. All of the Tortfeasors viewed and engaged with and disseminated Photo 1 for the sole purpose of causing Jane extreme emotional distress and other tortious injuries, and in pursuant of their own sexual gratification.

VIDEO 4

131. Video 4 depicts Jane and Jones engaging in sexual intercourse at their home they shared together in Westminster, Colorado that was recorded between July 2023 through July 2024.

132. Jones did not ask for Jane's consent to disseminate the video.

133. Jane discovered this video was shared with Sarnello on July 23, 2024, when she discovered Jones's other tortious actions.

134. Jones distributed this video to Sarnello via text message, seen below:



135.    Sarnello expresses his frustration with the content from Jones telling him "how are you sending all the wrong ones haha".

136.    Jones then saves Sarnello's feelings and sends Video 4 to Sarnello for Sarnello's pleasure in furtherance of the conspiracy.

137.    Upon information and belief, Sarnello was located in Salt Lake City, UT when he received this video.

138.    Sarnello knew or should have known that this video was disseminated without Jane's knowledge or consent, as was custom in the Tortfeasors' conspiracy and the fact that Jane never sent this video, or any content at any time, to Sarnello.

139.    Upon information and belief, VIDEO 4 was sent by Jones to the Trio Snapchat to be viewed by Alvarez and Corcoran-Sipe.

140. Upon information and belief Alvarez and Corcoran-Sipe accessed and viewed VIDEO 4.

141. Upon information and belief VIDEO 4 was also uploaded to Snapchat by Sarnello or Jones, into the thread they shared, together, for safekeeping.

142. Upon information and belief, all of the Tortfeasors disseminated VIDEO 4 between themselves.

143. Alvarez and Corcoran-Sipe knew or should have known that Jane did not consent to this video being disseminated, as was custom in the Tortfeasors' conspiracy, and the fact that Jane never shared any content with them, ever.

144. Jane is identifiable in VIDEO 4 by her long, red hair and body.

145. Jane is identifiable in VIDEO 4 by the fact that it was initially disseminated by her former partner, Jones.

146. In other words, individuals who know Jane personally would easily be able to identify Jane as the woman in the video.

147. All of the Tortfeasors knew Jane personally.

148. All of the Tortfeasors viewed and engaged with and disseminated Video 4 for the sole purpose of causing Jane extreme emotional distress and other tortious injuries, and in pursuant of their own sexual gratification.

VIDEO 5

149. Video 5 depicts Jane and Jones engaging in sexual intercourse at their home they shared together in Westminster, Colorado.

150. VIDEO 5 looks to be second dissemination of VIDEO 4 from Jones to Sarnello.

151.    Jones did not ask Jane to record this encounter nor did he ask her permission to disseminate it.

152.    Jane discovered this video on July 23, 2024, when she discovered Jones's other tortious actions.

153.    Jones distributed this video to Sarnello via text message, seen below:



154.    Upon information and belief, Sarnello was located in Salt Lake City, Utah when he received this video.

155.     Sarnello knew or should have known that this video was disseminated without Jane's knowledge or consent, as was custom in the Tortfeasors' conspiracy, and the fact that Jane never once sent Sarnello any content.

156.     Jones and Sarnello's malice intent is demonstrated by their own words, as seen in the above photo.

157.     Upon receipt of the video, Sarnello tells Jones he is "grateful" and hopeful that Jones will "make more" videos of Jane without her knowledge or consent.

158.     Jones and Sarnello's own words demonstrate that they shared in a conspiracy to create and distribute videos of sexual encounters with women, without consent.

159.     Upon information and belief, VIDEO 5 was sent by Jones to the Trio Snapchat to be viewed by Alvarez and Corcoran-Sipe.

160.     Upon information and belief, Alvarez and Corcoran-Sipe accessed and viewed VIDEO 5.

161.     Upon information and belief, all of the Tortfeasors disseminated VIDEO 5 between themselves.

162.     Alvarez and Corcoran-Sipe knew or should have known that Jane did not consent to this video being disseminated. as was custom in the Tortfeasors' conspiracy.

163.     Jane is identifiable in VIDEO 5 by her long, red hair and body.

164.     Jane is identifiable in VIDEO 5 by the fact that the video was originally disseminated by her former partner, Jones.

165.     In other words, individuals who know Jane personally would easily be able to identify Jane as the woman in the video.

166.     The Tortfeasors knew Jane personally.

167.     All of the Tortfeasors viewed and engaged with and disseminated Video 5 for the sole purpose of causing Jane extreme emotional distress and other tortious injuries, and in pursuant of their own sexual gratification.

VIDEO 6

168.     On February January 14, 2023, Jones raped Jane while unconscious in their shared hotel room in Chicago, Illinois.

169.     Jones knowingly and with the purpose to injure Jane recorded the rape, and immediately sent it to his co-conspirator Sarnello, in apparent celebration of his criminal act. See below[3]:



---

Plaintiff Jane is depicted laying nude face down on the hotel bed in this screengrab of the video. Counsel redacted it to maintain her privacy.

170.    Jones admits Jane is unconscious during the rape he writes to Sarnello:



171.    In case its not clear, Sarnello is not alarmed by his friend's comments, instead he actively aids and abets the criminal activity, writing "lol [JANE] looked dead" and Jane "looked like she wasn't ready for that pounding", amongst other vile writings.

172.    And after watching his friend rape Jane, Sarnello unconscionably offers to send his own created content to Jones saying "I have a long vid that I don't think I ever sent but I could send you parts of."

173.    The actions of Jones and Sarnello are despicable, unconscionable, and almost too shocking to adequately describe in writing.

174.    These actions demonstrate Jones and Sarnello's ongoing conspiracy to create and disseminate videos of sexual encounters with women, without consent.

27

175. Sarnello knew or should have known that this video was recorded without Jane's knowledge or consent, as was custom in the Tortfeasors' conspiracy, and the fact that Jane is face down and unconscious during the video.

176. Sarnello knew or should have known that this video was disseminated without Jane's knowledge or consent, as was custom in the Tortfeasors' conspiracy.

177. Jones and Sarnello's malice intent is demonstrated by their own words, as seen in the above photo.

178. Upon information and belief, VIDEO 6 was sent by Jones to the Trio Snapchat to be viewed by Alvarez and Corcoran-Sipe.

179. Upon information and belief Alvarez and Corcoran-Sipe accessed and viewed VIDEO 6.

180. Upon information and belief, either Jones or Sarnello transferred VIDEO 6 to their Snapchat thread for safekeeping.

181. Upon information and belief, all of the Tortfeasors disseminated VIDEO 6 between themselves.

182. Alvarez and Corcoran-Sipe knew or should have known that Jane did not consent to the sexual activity depicted in VIDEO 6, as Jane is on camera unconscious and face down.

183. Alvarez and Corcoran-Sipe knew or should have known that Jane did not consent to this video being recorded or disseminated as Jane is unconscious and face down.

184. Jane is identifiable in VIDEO 6 by her body and the presence of her then partner, Jones, whose face is on camera.

185. In other words, individuals who know Jane personally would easily be able to identify Jane as the woman in the video.

28

186.     The Tortfeasors know Jane personally.

187.     All of the Tortfeasors viewed and engaged with and disseminated Video 6 for the sole purpose of causing Jane extreme emotional distress and other tortious injuries, and in pursuant of their own sexual gratification.

VIDEOS 7 AND 8

188.     Videos 7 and 8 depict Jane and Jones engaging in sexual intercourse at their home they shared together in Westminster, Colorado.

189.     Jones knowingly and with a purpose to injure Jane secretly recorded these videos without Jane's knowledge or consent at the same time.

190.     Jane discovered this video on July 23, 2024, when she discovered Jones's other tortious actions.

191.     Jones distributed this video to Sarnello via text message, seen below:



192. Upon information and belief, Sarnello was located in Salt Lake City, Utah when he received these videos.

193. Sarnello knew or should have known that this video was recorded without Jane's knowledge or consent, as was custom in the Tortfeasors' conspiracy, and the fact that Jane's face is turned away from the camera in both videos.

194. Sarnello knew or should have known that this video was disseminated without Jane's knowledge or consent, as was custom in the Tortfeasors' conspiracy.

195. Upon information and belief, VIDEOS 7 AND 8 were sent by Jones to the Trio Snapchat to be viewed by Alvarez and Corcoran-Sipe.

196. Upon information and belief, Alvarez and Corcoran-Sipe accessed and viewed VIDEOS 7 AND 8.

197. Upon information and belief, either Jones or Sarnello transferred the video to their respective Snapchat thread for safekeeping.

198. Upon information and belief, all of the Tortfeasors disseminated VIDEOS 7 AND 8 between themselves.

199. Alvarez and Corcoran-Sipe knew or should have known that Jane did not consent to these videos being recorded or disseminated, as was custom in the Tortfeasors' conspiracy, and the fact that Jane's face is turned away from the camera in both videos.

200. Jane is identifiable in VIDEOS 7 AND 8 by her long, red hair and body.

201. Jane is identifiable in VIDEOS 7 AND 8 by the fact that they were originally disseminated by her then partner, Jones.

202. In other words, individuals who know Jane personally would easily be able to identify Jane as the woman in the video.

203. The Tortfeasors know Jane personally.

204. All of the Tortfeasors viewed and engaged with Videos 7 and 8 for the sole purpose of causing Jane extreme emotional distress and other tortious injuries, and in pursuant of their own sexual gratification.

PHOTO 2

205. Photo 2 depicts Jane and Betty taking a photos of themselves for their own private album.

206. Betty is fully nude in Photo 2.

207. Neither Jane nor Betty shared this photo with any of the Tortfeasors.

208. Instead, Jones accessed Jane's private device on or about August 29, 2023, with the malicious intent to share the photo with the Tortfeasors and to intentionally cause both Jane and Betty extreme emotional distress and other tortious injuries.

209. Jones knowingly and with a purpose to injure Jane and Betty disseminated this photo to Sarnello without Jane's knowledge or consent on or about August 30, 2023.

210. Jane discovered Jones sent Sarnello on July 23, 2024, when she discovered Jones's other tortious actions. Text messages between Jones and Sarnello are seen below:



211. Jones and Sarnello's malicious intent is evident by Jones's "joke" that he "went on a ukraian [sic] mission last night". Likely referencing Betty's Ukrainian heritage.

212.     Upon information and belief, Jones and/or Sarnello also shared Photo 2 with Alvarez and Corcoran-Sipe, personally.

213.     Evidence of this dissemination is seen in the screenshots of the Trio Snapchat thread where Corcoran-Sipe sends Photo 2 back to the Trio Members, for their record.

214.     Sarnello, Alvarez and Corcoran-Sipe knew or should have known that neither Jane nor Betty consented to this photo being disseminated, as was custom in the Tortfeasors' conspiracy, and the fact that neither woman shared it with them.

215.     Both Jane and Betty are easily identifiable in this photo by their respective faces and bodies.

216.     In other words, individuals who know Jane and/or Betty personally, would be able to identify them if they were to view this photo.

217.     Jane knows each Tortfeasor personally.

218.     All of the Tortfeasors viewed and engaged with Photo 2 for the sole purpose of causing Jane and Betty extreme emotional distress and other tortious injuries, and in pursuant of their own sexual gratification.

CONSPIRACY

219.     The Tortfeasors together created a conspiracy to plan, record, and edit videos of sexual encounters with women, without the woman's knowledge, to further their own sexual and financial gain.

220.     When Jane discovered Jones's misconduct, she opened the Trio Snapchat feed and found that Jones, Corcoran-Sipe and Alvarez were knowingly and purposefully exchanging explicit videos and photos of unknown women **over the course of years**.

33

221.    Jane knows this because she found that Jones, Corcoran-Sipe and Alvarez saved much of their exchanged content in the Trio Snapchat feed, including Photo 2.

222.    Jane found that the videos and photos discussed throughout this Complaint were in the Trio Snapchat, as well as the photo of Betty, and numerous videos and photos of Sarnello's former romantic partner, Jessica.

223.    Jane found hundreds of photos and videos featuring unknown women.

224.    These unknown women are also victims of the Tortfeasors' conspiracy along with Jane, Betty and Jessica.

225.    Jane recognized that Jones, Alvarez and Corcoran-Sipe were all sharing content in the Trio Snapchat feed and that they were all interacting with the content that was shared.

226.    Jane also learned that Sarnello and Jones had their own Snapchat thread, as evidenced by their text messages, above.

227.    Upon information and belief, Sarnello and Jones shared and regularly interacted with the content they shared in their respective thread, as well.

228.

229.    The Tortfeasors knew what they were doing was morally wrong and illegal and they made substantial efforts to keep their disgusting behavior secret.

230.    In one text message from Jones to Sarnello, Jones describes his plans for the weekend and then says, unprompted, "so if you need me text me cause I aint opening snap with you rn (laughing face emoji)". **Exhibit 3.**

231.    Sarnello responds "…ight I got you and yeah **def don't open snap at all**." *Id.* (emphasis added).

232.    On August 8, 2021, Sarnello sent Jones a video of him and unknown woman (likely Jessica, his former partner), engaging in sexual intercourse saying:



233.    The below is an excerpt of another disgusting exchange between Jones and Sarnello evidencing their deliberate and purposeful use of the text/iMessage and Snapchat to **create and exchange** illegally obtained, non-consensual recordings of Jane, Betty and Jessica.



234.    Here, if the exchange is not clear, Sarnello is asking Jones if he likes a video

Sarnello sent him on Snapchat where "the ending [his] face/head is just being pushed on".

235.    Sarnello then asked Jones "How did you just finish" – which is another way of

asking Jones how did it feel to sexually climax to that video Sarnello shared with him.

236.    Jones responds affirmatively, confirmed he "busted" after watching the video.

237.    Sarnello shows genuine concern for his friend, asking if it "was a good video"

with Jones responding, "uhh yeah I think my fav one."

238.  **Exhibit 4** depicted Sarnello sending a video featuring Jessica to Jones and instructing Jones to make more content of him because Jones "owes him" for sending him the video of Jessica.

239.  To add insult to injury, Jones then confirms with Sarnello that he intends to make his own video content depicting "cowgirl and doggy" style sex acts. Plaintiff Jane is the victim of this conspiracy.

240.  Jones to Sarnello "any preferences and a vid/position ahahaha ill make a vid just for you" **Exhibit 4.**

241.  On December 1, 2022, Sarnello askes Jones for more content of him and Jane. **Exhibit 5.**

242.  On June 27, 2024, Sarnello again asks Jones for more videos of him and Jane, see below:



243.    The unconscionable behavior between the Tortfeasors continued **for over two years.**

244.    They knowingly, purposefully, and with intent to injure Jane, Betty and Jessica, conspired to create and disseminate pornographic videos and photos of their respective partners without any of the women's consent or knowledge in violation of a multitude of laws.

245.    The Tortfeasors demonstrated their intent, knowledge and willfulness by each being an active member of their respective text/iMessage and Snapchat and the feeds where these exchanges occurred regularly.

246.    Jones and Sarnello's behavior is especially outrageous, unconscionable and disgusting – both men actively and intentionally conspired to manipulate their partners into engaging in specific sexual acts so that they could record the acts and share them together.

247.    Evidence of Sarnello and Jones's conspiracy is documented above, where Jones tells Sarnello he will make a video of himself with Jane in a sexual position of Sarnello's choosing, without Jane's knowledge or consent.

ONLY FANS

248.    As if it could not get any worse, upon information and belief at least Jones conspired to and actually did upload the content discussed above to OnlyFans for their respective personal financial gain.

249.    In case the Court is not aware, OnlyFans is a social media website where users can create accounts to access X-rated content from creators in exchange for money.

250.    The website allows creators to also message with their "fans" in exchange for money as well.

251.    Upon information and belief, each Tortfeasor held and/or holds an OnlyFans account and used their respective accounts to access X-rated material from creators and to upload their own content.

252.    As seen below, the Trio Group Chat shows conversations between Jones, Corcoran-Sipe and Alvarez discussing their respective OnlyFans accounts, see below:



253.    Jones admits his account is "banned" by OnlyFans, for unknown reasons.

254.    In uploading the videos and photos which underlie this Complaint for monetary gain, the Tortfeasors may have committed both state and federal wire fraud and sex trafficking laws.

255.    Upon information and belief, at least Jones knowingly, willfully and purposefully committed these outrageous acts with the intent to cause Jane and Betty extreme emotional distress and other tortious injuries for his own financial gain and sexual gratification.

<u>JANE'S CONFRONTATION OF JONES</u>

256.    On July 23, 2024, Jane discovered the Tortfeasors actions after stumbling across the Trio Group Chat and Trio Snapchat on a laptop she shared with Jones.

40

257.    Jane confronted Jones about her discovery the next morning after Jones returned from a night shift where he worked as a nurse.

258.    In the days that followed, Jane reported Jones to the Westminster, Colorado Police Department and sought and was granted an Order of Protection.

259.    Westminster Police arrested Jones on or about July 26, 2024.

260.    In one of Jane and Jones's final conversations, Jones admitted his wrongdoing to Jane.

261.    Jones said, "I'm sorry I threw everything away…I'm sorry I'm disgusting. You don't deserve any of this…and I'm sorry. I understand there will be consequences for my actions."

262.    Jessica also confronted Sarnello about his actions after learning about Sarnello's behavior from Jane

263.    Sarnello and Jessica broke up soon after July 24, 2024, as well.

HOMEOWNERS LIABILITY

264.    Later that week Homeowner, Jennifer Jones, reached out to Jane to apologize for her son's behavior after his arrest. **Exhibit 6**.

265.    At all relevant times as noted in this Complaint, Jane was a welcomed guest at the Homeowner's residence.

266.    As such, the Homeowners had a duty of care to ensure that Jane was protected from intentional torts that occurred on their property.

267.    Homeowners had a duty to teach their son, JONES, about sexual assault and consent, and secretly recording sexual experiences without consent.

268.    JONES SR. is a former police chief with extensive knowledge of criminal sexual assault, sending and receiving images without consent, recording videos without consent, and the like.

269.    Homeowners failed to teach JONES these skills.

270.    Homeowners failed to monitor JONES in their home.

271.    Homeowners' failure caused Jane's injuries.

272.    The Homeowners knew or should have known that Jones committed various intentional torts against Jane in their home.

273.    Jones's actions as a resident of the home caused Jane's injuries.

274.    Upon information and belief, the Homeowners held a homeowners insurance policy over their residence formerly located in Lake County, Illinois where the tortious actions depicted in Videos 2, 7 and 8, occurred.

275.    The homeowners insurance policy likely protected tort victims—like Jane—from injury stemming from the intentional torts that occurred at their property.

276.    Jane is a protected person under the policy.

277.    The Homeowners are liable to Jane for her injuries.

PLAINTIFF JANE DOE'S DAMAGES

278.    Plaintiff Jane Doe incurred and continues to incur significant damages in this case.

279.    After the discovery of Jones's misconduct on July 23, 2024, Jane incurred compensatory and pecuniary damage caused by the Defendants in the following ways:

a.  At least $750.00 in gas she incurred having to travel to Illinois from Colorado and back again in order to physically separate herself from Jones since they shared an apartment together;

b.  The cost of new brakes, numerous oil changes, and new tires on her vehicles to make the cross-country treks;

c.  5,000 miles in depreciation on the value of her vehicle due to the numerous cross-country treks;

d.  Over $5,000.00 in attorneys fees and costs paid to a Victim Witness attorney Jane hired in Colorado to guide her through Jones's Colorado criminal matter;

e.  4 weeks off from work for medical recovery following the discovery of the Tortfeasor's misconduct, which greatly reduced her income as she is and was a commission-based employee;

f.  1 day off of work per month from July 2024 to March 2025 to attend Jones's criminal proceedings;

g.  Weekly therapy appointments <u>over the course of years</u>, which incurred a minimum of $39.00 co-payment, each;

h.  The loss of consortium after Jones moved out of their shared apartment – Jane and Jones previously split all bills. Since the revelation of Jones's misconduct, Jane was thereafter solely responsible for the Parties' joint rent and utilities as well as the daily care for a dog they adopted together;

i.  Over $12,000.00 of attorneys fees and costs to SPITZER LAW P.C., for the investigation and drafting of this Complaint; and

43

280. Any and all other consequential damages that result from JONES's misconduct and the prosecution of same that may be revealed at trial.

    a. After the discovery of Jones's misconduct on July 23, 2024, Jane incurred unquantifiable extreme emotional and reputational damage caused by the Defendants in the following ways:

    b. Diagnosis of a multiple mental health conditions which all stem from the Tortfeasors' misconduct and will be revealed at Trial when and if the Parties' enter into an enforceable protective order;

    c. Reputational harm in both Jane and the Tortfeasor's collegiate circle of friends as Jane went to college with the Tortfeasors. Jane will testify that she has been the subject of gossip amongst her group of college friends and acquaintances since the discovery of the Tortfeasors' misconduct.

    d. Reputational harm in Jane and Jones's Lake County, Illinois circle of friends as Jane and Jones attended high school there together.

    e. Reputational harm amongst nursing staff at UC Health. These individuals are Jones's former coworkers and were alerted to Jones's arrest when it occurred and have subsequently reached out to Jane to inquire on the status of Jones's case.

    f. Reputational harm amongst the greater community of Lake County, Illinois. Both Jones and Jane's respective families were/are long-time residents of the Lake County, Illinois community.

281. Regarding each group of individuals referenced in ¶ 280 above, Jane will testify that she, her parents, and her family members are the constantly bombarded with questions about

Jane's welfare, the criminal action(s) against Jones, the effect on Jane, and "concern" about how this will affect Jane in the future.

282.    Jane will testify that she is now known amongst her college friends and acquaintances, amongst her friends and acquaintances from Lake County, Illinois and her acquaintances from Jones's former employment as "the girl that had a terrible thing happen" to her.

283.    Jane will testify about the humiliation she felt to learn that her long-time partner and "friends" were conspiring behind her back to view and comment on her body, her private sexual encounters with Jones, and that fact that the Tortfeasors viewed her sexual assault.

284.    Jane will testify that she was devasted to learn that Jones sexually assaulted her, since she was unconscious during the January 2023 rape.

285.    Jane will testify that she was humiliated to reveal the extent of the Tortfeasors misconduct to not only her parents and siblings, but also her and Jones's joint friends and acquaintances, as well as her HR department to qualify for short-term disability from work.

286.    Jane will testify that she is continually bombarded with questions from well-meaning individuals, who she does not consider to be close friends, but who know about what happened to her from community gossip in both Iowa and Lake County, Illinois.

287.    Jane will testify that the betrayal she felt from the Tortfeasors was and is unfathomable. That while they were exchanging her intimate videos back and forth behind her back, to her face they were visiting her at her apartment in Colorado. That she hosted them in her home; cooking and cleaning for them, when they came to visit.

288.     Jane will testify that the Tortfeasors actions cause her daily anxiety. That some days she struggles to breathe. That some days she is so inconsolable that she cannot meaningfully work.

289.     Jane will testify that the Tortfeasors actions cause her to be scared to find love again, to be vulnerable with other partners, or to be touched intimately because of their violative misconduct.

290.     Jane will testify that the Tortfeasors actions have caused her to lose sleep, have disrupted her eating habits, and have disrupted her sense of peace and safety.

291.     Jane will testify that the Tortfeasors actions have caused her feelings of guilt knowing that the Homeowners may incur emotional damage through her pursuit of justice.

292.     Jane will testify about the immense loneliness she feels in her attempt to seek justice knowing that her circle of friends and family all have ties to the Tortfeasors and the Homeowners, as well.

293.     Jane will testify that the Jones's betrayal went even further than already expressed in this Complaint, that after Jane discovered his misconduct, that Jones contacted their mutual friends and attempted to disparage Jane and blame her for their breakup going as far to say that the secret recordings of her and his desire to step outside their relationship was due to her not being fully committed to him.

294.     Jane will testify that at this time, she has no way to know the extent of the Tortfeasors' misconduct. That she has physical evidence of only 8 videos and 2 photos, but it is impossible to say at this time to whom else those videos and photos were shared, and how many times.

295.     Jane will testify that the damage she incurred by the Tortfeasors' misconduct exacerbated the emotional damage she was already feeling after losing her and Jones's pregnancy in late Spring 2024.

296.     Jane will testify that each Tortfeasors' action of misconduct independently caused her extreme emotional distress and monetary damage, as articulated throughout this Complaint.

## LEGAL CLAIMS

## FEDERAL STATUTORY CLAIMS

### COUNTS I - IX

#### COUNT I
#### VIDEO 1

297.     Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 297, here.

298.     For the reasons set forth above, JONES violated § 1309 of the Violence Against Women Act when he knowingly and purposefully and/or with reckless disregard for his actions, recorded VIDEO 1 without Jane's knowledge or consent and disseminated VIDEO 1 to the Tortfeasors without Jane's knowledge or consent.

299.     Jane had a reasonable expectation of privacy that the sexual intercourse she and Jones engaged in would remain private between them, and not subject to recording or dissemination.

300.     Jones disseminated VIDEO 1 in a manner that affects interstate commerce as he was located in IOWA when VIDEO 1 was recorded, and Sarnello was in Utah when the video was received.

301.     VIDEO 1 was then sent to Alvarez in California and Corcoran-Sipe in Washington via the Trio Snapchat, in a manner that affects interstate commerce.

302. All of Tortfeasors knew or acted recklessly in knowing that VIDEO 1 was recorded and disseminated without Jane's knowledge or consent.

303. All of the Tortfeasors engaged with VIDEO 1 in a knowing and/or reckless manner that caused Jane damage.

304. All of the Tortfeasors were in their mid-to-late twenties at the time of the actions underlying this Complaint. In other words, they are and have been of majority age.

305. Upon information and belief, Jones and/or the Tortfeasors uploaded VIDEO 1 to OnlyFans for their respective financial gain in a manner that affects interstate commerce.

306. As stated above, Jane is identifiable as the individual depicted in VIDEO 1.

307. As stated above, Jane suffered extreme emotional damage and actual damages due to the Tortfeasor's actions.

308. Jane incurs attorneys fees and costs for having to bring this Complaint.

309. Jane brings this Complaint within § 1309 of the Violence Against Women Act. statute of limitations as this Complaint was filed less than 2 years since her discovery of the Tortfeasor's actions.

WHEREFORE, with regard to Count I of this Complaint, Plaintiff Jane Doe demands judgment against the Tortfeasors and prays this Court:

a. Find Jones liable for violating § 1309 of the Violence Against Women Act for Jones's knowing and purposefully recording and disseminating VIDEO 1.

b. Find Sarnello, Corcoran-Sipe and Alvarez liable for violating § 1309 of the Violence Against Women Act for knowingly and purposefully engaging

48

with VIDEO 1 through text message and Snapchat in a manner that affects interstate commerce;

c.    Award Jane damages the greater of her economic or noneconomic damages, or $150,000.00 in statutory liquidated damages against at the Tortfeasors under the theory of joint and several liability;

d.    Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

e.    Require Jones to take all reasonable actions to remove VIDEO 1 from the internet at his sole cost and responsibility; and

f.    Award Plaintiff any other relief that is deemed equitable and just.

COUNT II
VIDEO 2

310.    Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 310, here.

311.    For the reasons set forth above, JONES violated § 1309 of the Violence Against Women Act when he knowingly and purposefully and/or with reckless disregard for his actions, recorded VIDEO 2 without Jane's knowledge or consent and disseminated VIDEO 2 to the Tortfeasors without Jane's knowledge or consent.

312.    Jane had a reasonable expectation of privacy that the sexual intercourse she and Jones engaged in would remain private between them, and not subject to recording or dissemination.

313.    Jones disseminated VIDEO 2 in a manner that affects interstate commerce as he was located in ILLINOIS when VIDEO 2 was recorded, and Sarnello was in Utah when the video was received.

314. VIDEO 2 was then sent to Alvarez in California and Corcoran-Sipe in Washington via the Trio Snapchat, in a manner that affects interstate commerce.

315. All of Tortfeasors knew or acted recklessly in knowing that VIDEO 2 was recorded and disseminated without Jane's knowledge or consent.

316. All of the Tortfeasors engaged with VIDEO 2 in a knowing and/or reckless manner that caused Jane damage.

317. All of the Tortfeasors were in their mid-to-late twenties at the time of the actions underlying this Complaint. In other words, they are and have been of majority age.

318. Upon information and belief, Jones and/or the Tortfeasors uploaded VIDEO 2 to OnlyFans for their respective financial gain in a manner that affects interstate commerce.

319. As stated above, Jane is identifiable as the individual depicted in VIDEO 2.

320. As stated above, Jane suffered extreme emotional damage and actual damages due to the Tortfeasor's actions.

321. Jane incurs attorneys fees and costs for having to bring this Complaint.

322. Jane brings this Complaint within § 1309 of the Violence Against Women Act. statute of limitations as this Complaint was filed less than 2 years since her discovery of the Tortfeasor's actions.

WHEREFORE, with regard to Count II of this Complaint, Plaintiff Jane Doe demands judgment against the Tortfeasors and prays this Court:

g. Find Jones liable for violating § 1309 of the Violence Against Women Act for Jones's knowing and purposefully recording and disseminating VIDEO 2.

h.      Find Sarnello, Corcoran-Sipe and Alvarez liable for violating § 1309 of the Violence Against Women Act for knowingly and purposefully engaging with VIDEO 2 through text message and Snapchat in a manner that affects interstate commerce;

i.      Award Jane damages the greater of her economic or noneconomic damages, or $150,000.00 in statutory liquidated damages against at the Tortfeasors under the theory of joint and several liability;

j.      Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

k.      Require Jones to take all reasonable actions to remove VIDEO 2 from the internet at his sole cost and responsibility; and

l.      Award Plaintiff any other relief that is deemed equitable and just.

## COUNT III
## VIDEO 3

323.    Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 323, here.

324.    For the reasons set forth above, JONES violated § 1309 of the Violence Against Women Act when he knowingly and purposefully and/or with reckless disregard for his actions, recorded VIDEO 3 without Jane's knowledge or consent and disseminated VIDEO 3 to the Tortfeasors without Jane's knowledge or consent.

325.    Jane had a reasonable expectation of privacy that the sexual intercourse she and Jones engaged in would remain private between them, and not subject to recording or dissemination.

326. Jones disseminated VIDEO 3 in a manner that affects interstate commerce as he was located in ILLINOIS when he secretly recorded VIDEO 3, and Sarnello was in Utah when he received the video.

327. VIDEO 3 was then sent to Alvarez in California and Corcoran-Sipe in Washington via the Trio Snapchat, in a manner that affects interstate commerce.

328. All of Tortfeasors knew or acted recklessly in knowing that VIDEO 3 was recorded and disseminated without Jane's knowledge or consent.

329. All of the Tortfeasors engaged with VIDEO 3 in a knowing and/or reckless manner that caused Jane damage.

330. All of the Tortfeasors were in their mid-to-late twenties at the time of the actions underlying this Complaint. In other words, they are and have been of majority age.

331. Upon information and belief, Jones and/or the Tortfeasors uploaded VIDEO 3 to OnlyFans for their respective financial gain in a manner that affects interstate commerce.

332. As stated above, Jane is identifiable as the individual depicted in VIDEO 3.

333. As stated above, Jane suffered extreme emotional damage and actual damages due to the Tortfeasor's actions.

334. Jane incurs attorneys fees and costs for having to bring this Complaint.

335. Jane brings this Complaint within § 1309 of the Violence Against Women Act. statute of limitations as this Complaint was filed less than 2 years since her discovery of the Tortfeasor's actions.

WHEREFORE, with regard to Count III of this Complaint, Plaintiff Jane Doe demands judgment against the Tortfeasors and prays this Court:

m.    Find Jones liable for violating § 1309 of the Violence Against Women Act for Jones's knowing and purposefully recording and disseminating VIDEO 3.

n.    Find Sarnello, Corcoran-Sipe and Alvarez liable for violating § 1309 of the Violence Against Women Act for knowingly and purposefully engaging with VIDEO 3 through text message and Snapchat in a manner that affects interstate commerce;

o.    Award Jane damages the greater of her economic or noneconomic damages, or $150,000.00 in statutory liquidated damages against at the Tortfeasors under the theory of joint and several liability;

p.    Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

q.    Require Jones to take all reasonable actions to remove VIDEO 3 from the internet at his sole cost and responsibility; and

r.    Award Plaintiff any other relief that is deemed equitable and just.

## COUNT IV
## PHOTO 1

336.    Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 336, here.

337.    For the reasons set forth above, JONES violated § 1309 of the Violence Against Women Act when he knowingly and purposefully and/or with reckless disregard for his actions, disseminated PHOTO 1 without Jane's knowledge or consent to the Tortfeasors.

338.    Jane Doe had a reasonable expectation of privacy in sending PHOTO 1 for only Jones's consumption as they were in a long-term relationship and she had no knowledge that he

had a pattern of practice of disseminating her private photos until her discovery of same on July 24, 2024.

339.     Jones disseminated PHOTO 1 in a manner that affects interstate commerce as he was located in Illinois when he disseminated the photo to Sarnello and Sarnello was in Utah when he received the photo.

340.     PHOTO 1 was then sent to Alvarez in California and Corcoran-Sipe in Washington via the Trio Snapchat, in a manner that affects interstate commerce.

341.     All of Tortfeasors knew or acted recklessly in knowing that PHOTO 1 was disseminated without Jane's knowledge or consent.

342.     All of the Tortfeasors engaged with PHOTO 1 in a knowing and/or reckless manner that caused Jane damage.

343.     All of the Tortfeasors were in their mid-to-late twenties at the time of the actions underlying this Complaint. In other words, they are and have been of majority age.

344.     Upon information and belief, Jones and/or the Tortfeasors uploaded PHOTO 1 to OnlyFans for their respective financial gain in a manner that affects interstate commerce.

345.     As stated above, Jane is identifiable as the individual depicted in PHOTO 1.

346.     As stated above, Jane suffered extreme emotional damage and actual damages due to the Tortfeasor's actions.

347.     Jane incurs attorneys fees and costs for having to bring this Complaint.

348.     Jane brings this Complaint within § 1309 of the Violence Against Women Act. statute of limitations as this Complaint was filed less than 2 years since her discovery of the Tortfeasor's actions.

WHEREFORE, with regard to Count IV of this Complaint, Plaintiff Jane Doe demands judgment against the Tortfeasors and prays this Court:

s.      Find Jones liable for violating § 1309 of the Violence Against Women Act for Jones's knowing and purposeful dissemination of PHOTO 1.

t.      Find Sarnello, Corcoran-Sipe and Alvarez liable for violating § 1309 of the Violence Against Women Act for knowingly and purposefully engaging with PHOTO 1 through text message and Snapchat in a manner that affects interstate commerce;

u.      Award Jane damages the greater of her economic or noneconomic damages, or $150,000.00 in statutory liquidated damages against at the Tortfeasors under the theory of joint and several liability;

v.      Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

w.      Require Jones to take all reasonable actions to remove PHOTO 1 from the internet at his sole cost and responsibility; and

x.      Award Plaintiff any other relief that is deemed equitable and just.

## COUNT V
## VIDEO 4

349.      Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 349, here.

350.      For the reasons set forth above, JONES violated § 1309 of the Violence Against Women Act when he knowingly and purposefully and/or with reckless disregard for his actions, recorded VIDEO 4 without Jane's knowledge or consent and disseminated VIDEO 4 to the Tortfeasors without Jane's knowledge or consent.

351. Jane had a reasonable expectation of privacy that the sexual intercourse she and Jones engaged in would remain private between them, and not subject to recording or dissemination.

352. Jones disseminated VIDEO 4 in a manner that affects interstate commerce as he was located in Colorado when he secretly recorded VIDEO 4, and Sarnello was in Utah when he received the video.

353. VIDEO 4 was then sent to Alvarez in California and Corcoran-Sipe in Washington via the Trio Snapchat, in a manner that affects interstate commerce.

354. All of Tortfeasors knew or acted recklessly in knowing that VIDEO 4 was recorded and disseminated without Jane's knowledge or consent.

355. All of the Tortfeasors engaged with VIDEO 4 in a knowing and/or reckless manner that caused Jane damage.

356. All of the Tortfeasors were in their mid-to-late twenties at the time of the actions underlying this Complaint. In other words, they are and have been of majority age.

357. Upon information and belief, Jones and/or the Tortfeasors uploaded VIDEO 4 to OnlyFans for their respective financial gain in a manner that affects interstate commerce.

358. As stated above, Jane is identifiable as the individual depicted in VIDEO 4.

359. As stated above, Jane suffered extreme emotional damage and actual damages due to the Tortfeasor's actions.

360. Jane incurs attorneys fees and costs for having to bring this Complaint.

361. Jane brings this Complaint within § 1309 of the Violence Against Women Act. statute of limitations as this Complaint was filed less than 2 years since her discovery of the Tortfeasor's actions.

WHEREFORE, with regard to Count V of this Complaint, Plaintiff Jane Doe demands judgment against the Tortfeasors and prays this Court:

y.      Find Jones liable for violating § 1309 of the Violence Against Women Act for Jones's knowing and purposefully recording and disseminating VIDEO 4.

z.      Find Sarnello, Corcoran-Sipe and Alvarez liable for violating § 1309 of the Violence Against Women Act for knowingly and purposefully engaging with VIDEO 4 through text message and Snapchat in a manner that affects interstate commerce;

aa.     Award Jane damages the greater of her economic or noneconomic damages, or $150,000.00 in statutory liquidated damages against at the Tortfeasors under the theory of joint and several liability;

bb.     Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

cc.     Require Jones to take all reasonable actions to remove VIDEO 4 from the internet at his sole cost and responsibility; and

dd.     Award Plaintiff any other relief that is deemed equitable and just.

## COUNT VI
## VIDEO 5

362.    Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 362, here.

363.    For the reasons set forth above, JONES violated § 1309 of the Violence Against Women Act when he knowingly and purposefully and/or with reckless disregard for his actions, recorded VIDEO 5 without Jane's knowledge or consent and disseminated VIDEO 5 to the Tortfeasors without Jane's knowledge or consent.

364. Jane had a reasonable expectation of privacy that the sexual intercourse she and Jones engaged in would remain private between them, and not subject to recording or dissemination.

365. Jones disseminated VIDEO 5 in a manner that affects interstate commerce as he was located in COLORADO when he secretly recorded VIDEO 5, and Sarnello was in Utah when he received the video.

366. VIDEO 5 was then sent to Alvarez in California and Corcoran-Sipe in Washington via the Trio Snapchat, in a manner that affects interstate commerce.

367. All of Tortfeasors knew or acted recklessly in knowing that VIDEO 5 was recorded and disseminated without Jane's knowledge or consent.

368. All of the Tortfeasors engaged with VIDEO 5 in a knowing and/or reckless manner that caused Jane damage.

369. All of the Tortfeasors were in their mid-to-late twenties at the time of the actions underlying this Complaint. In other words, they are and have been of majority age.

370. Upon information and belief, Jones and/or the Tortfeasors uploaded VIDEO 5 to OnlyFans for their respective financial gain in a manner that affects interstate commerce.

371. As stated above, Jane is identifiable as the individual depicted in VIDEO 5.

372. As stated above, Jane suffered extreme emotional damage and actual damages due to the Tortfeasor's actions.

373. Jane incurs attorneys fees and costs for having to bring this Complaint.

374. Jane brings this Complaint within § 1309 of the Violence Against Women Act. statute of limitations as this Complaint was filed less than 2 years since her discovery of the Tortfeasor's actions.

WHEREFORE, with regard to Count VI of this Complaint, Plaintiff Jane Doe demands judgment against the Tortfeasors and prays this Court:

ee.   Find Jones liable for violating § 1309 of the Violence Against Women Act for Jones's knowing and purposefully recording and disseminating VIDEO 5.

ff.   Find Sarnello, Corcoran-Sipe and Alvarez liable for violating § 1309 of the Violence Against Women Act for knowingly and purposefully engaging with VIDEO 5 through text message and Snapchat in a manner that affects interstate commerce;

gg.   Award Jane damages the greater of her economic or noneconomic damages, or $150,000.00 in statutory liquidated damages against at the Tortfeasors under the theory of joint and several liability;

hh.   Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

ii.   Require Jones to take all reasonable actions to remove VIDEO 5 from the internet at his sole cost and responsibility; and

jj.   Award Plaintiff any other relief that is deemed equitable and just.

COUNT VII
VIDEO 6

375.   Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 375, here.

376.   For the reasons set forth above, JONES violated § 1309 of the Violence Against Women Act when he knowingly and purposefully and/or with reckless disregard for his actions, recorded VIDEO 6 without Jane's knowledge or consent and disseminated VIDEO 6 to the Tortfeasors without Jane's knowledge or consent.

377.    Jane had a reasonable expectation of privacy that Jones violated when he raped her as depicted in VIDEO 6.

378.    Jones disseminated VIDEO 6 in a manner that affects interstate commerce as he was located in Illinois when he secretly recorded VIDEO 6, and Sarnello was in Utah when he received the video.

379.    VIDEO 6 was then sent to Alvarez in California and Corcoran-Sipe in Washington via the Trio Snapchat, in a manner that affects interstate commerce.

380.    All of Tortfeasors knew or acted recklessly in knowing that VIDEO 6 was recorded and disseminated without Jane's knowledge or consent as she laid unconscious during the video and it was evident that the video depicted her rape.

381.    All of the Tortfeasors engaged with VIDEO 6 in a knowing and/or reckless manner that caused Jane damage.

382.    All of the Tortfeasors were in their mid-to-late twenties at the time of the actions underlying this Complaint. In other words, they are and have been of majority age.

383.    Upon information and belief, Jones and/or the Tortfeasors uploaded VIDEO 6 to OnlyFans for their respective financial gain in a manner that affects interstate commerce.

384.    As stated above, Jane is identifiable as the individual depicted in VIDEO 6.

385.    As stated above, Jane suffered extreme emotional damage and actual damages due to the Tortfeasor's actions.

386.    Jane incurs attorneys fees and costs for having to bring this Complaint.

387.    Jane brings this Complaint within § 1309 of the Violence Against Women Act. statute of limitations as this Complaint was filed less than 2 years since her discovery of the Tortfeasor's actions.

60

WHEREFORE, with regard to Count VII of this Complaint, Plaintiff Jane Doe demands judgment against the Tortfeasors and prays this Court:

kk. Find Jones liable for violating § 1309 of the Violence Against Women Act for Jones's knowing and purposefully recording and disseminating VIDEO 6.

ll. Find Sarnello, Corcoran-Sipe and Alvarez liable for violating § 1309 of the Violence Against Women Act for knowingly and purposefully engaging with VIDEO 6 through text message and Snapchat in a manner that affects interstate commerce;

mm. Award Jane damages the greater of her economic or noneconomic damages, or $150,000.00 in statutory liquidated damages against at the Tortfeasors under the theory of joint and several liability;

nn. Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

oo. Require Jones to take all reasonable actions to remove VIDEO 6 from the internet at his sole cost and responsibility; and

pp. Award Plaintiff any other relief that is deemed equitable and just.

COUNT VIII<br>PHOTO 2

388. Jane re-allege and incorporate the facts set forth in ¶¶ 1-296 as ¶ 388, here.

389. For the reasons set forth above, JONES violated § 1309 of the Violence Against Women Act when he knowingly and purposefully and/or with reckless disregard for his actions, disseminated PHOTO 2 neither Jane nor Betty's knowledge or consent to the Tortfeasors.

390.    Jane Doe had a reasonable expectation of privacy in keeping PHOTO 2 on her personal phone. As discussed above, Jane never sent PHOTO 2 to anyone, let alone Jones or the Tortfeasors.

391.    Jones disseminated PHOTO 2 in a manner that affects interstate commerce as he accessed PHOTO 2 from Jane's device while in the state of COLORADO and he sent it to Sarnello while Sarnello lived in Utah.

392.    PHOTO 2 was then sent to Alvarez in California and Corcoran-Sipe in Washington via the Trio Snapchat, in a manner that affects interstate commerce.

393.    All of Tortfeasors knew or acted recklessly in knowing that PHOTO 2 was disseminated without Jane's knowledge or consent.

394.    All of the Tortfeasors engaged with PHOTO 2 in a knowing and/or reckless manner that caused Jane damage.

395.    All of the Tortfeasors were in their mid-to-late twenties at the time of the actions underlying this Complaint. In other words, they are and have been of majority age.

396.    Upon information and belief, Jones and/or the Tortfeasors uploaded PHOTO 2 to OnlyFans for their respective financial gain in a manner that affects interstate commerce.

397.    As stated above, both Betty and Jane are identifiable as the individuals depicted in PHOTO 2.

398.    As stated above, Jane suffered extreme emotional damage and actual damages due to the Tortfeasor's actions.

399.    Jane incurs attorneys fees and costs for having to bring this Complaint.

400.    Jane brings this Complaint within § 1309 of the Violence Against Women Act.
statute of limitations as this Complaint was filed less than 2 years since both women's discovery
of the Tortfeasor's actions.

WHEREFORE, with regard to Count VIII of this Complaint, Plaintiff Jane Doe demand
judgment against the Tortfeasors and prays this Court:

qq.    Find Jones liable for violating § 1309 of the Violence Against Women Act
for Jones's knowing and purposeful dissemination of PHOTO 1.

rr.    Find Sarnello, Corcoran-Sipe and Alvarez liable for violating § 1309 of the
Violence Against Women Act for knowingly and purposefully engaging
with PHOTO 1 through text message and Snapchat in a manner that affects
interstate commerce;

ss.    Award Jane damages the greater of her economic or noneconomic damages,
or $150,000.00 in statutory liquidated damages against the Tortfeasors
under the theory of joint and several liability;

tt.    Award Jane reasonable attorneys fees and costs for having to bring this
Complaint;

uu.    Require Jones to take all reasonable actions to remove PHOTO 1 from the
internet at his sole cost and responsibility; and

vv.    Award Plaintiff any other relief that is deemed equitable and just.

## COUNT IX
### VIDEOS 7 AND 8

401.    Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 401, here.

402.    For the reasons set forth above, JONES violated § 1309 of the Violence Against
Women Act when he knowingly and purposefully and/or with reckless disregard for his actions,

recorded VIDEOS 7 AND 8 without Jane's knowledge or consent and disseminated VIDEOS 7 AND 8 to the Tortfeasors without Jane's knowledge or consent.

403.   Jane had a reasonable expectation of privacy that the sexual intercourse she and Jones engaged in would remain private between them, and not subject to recording or dissemination.

404.   Jones disseminated VIDEOS 7 and 8 in a manner that affects interstate commerce as he was located in ILLINOIS when he secretly recorded the videos, and Sarnello was in Utah when he received the video.

405.   VIDEOS 7 and 8 were then sent to Alvarez in California and Corcoran-Sipe in Washington via the Trio Snapchat, in a manner that affects interstate commerce.

406.   All of Tortfeasors knew or acted recklessly in knowing that the videos were recorded and disseminated without Jane's knowledge or consent.

407.   All of the Tortfeasors engaged with the videos in a knowing and/or reckless manner that caused Jane damage.

408.   All of the Tortfeasors were in their mid-to-late twenties at the time of the actions underlying this Complaint. In other words, they are and have been of majority age.

409.   Upon information and belief, Jones and/or the Tortfeasors uploaded VIDEOS 7 and 8 to OnlyFans for their respective financial gain in a manner that affects interstate commerce.

410.   As stated above, Jane is identifiable as the individual depicted in VIDEOS 7 and 8.

411.   As stated above, Jane suffered extreme emotional damage and actual damages due to the Tortfeasor's actions.

412.  Jane incurs attorneys fees and costs for having to bring this Complaint.

413.  Jane brings this Complaint within § 1309 of the Violence Against Women Act. statute of limitations as this Complaint was filed less than 2 years since her discovery of the Tortfeasor's actions.

WHEREFORE, with regard to Count IX of this Complaint, Plaintiff Jane Doe demands judgment against the Tortfeasors and prays this Court:

ww.  Find Jones liable for violating § 1309 of the Violence Against Women Act for Jones's knowing and purposefully recording and disseminating VIDEOS 7 and 8.

xx.  Find Sarnello, Corcoran-Sipe and Alvarez liable for violating § 1309 of the Violence Against Women Act for knowingly and purposefully engaging with VIDEOS 7 and 8 through text message and Snapchat in a manner that affects interstate commerce;

yy.  Award Jane damages the greater of her economic or noneconomic damages, or $150,000.00 in statutory liquidated damages against the Tortfeasors under the theory of joint and several liability;

zz.  Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

aaa.  Require Jones to take all reasonable actions to remove VIDEOS 7 and 8 from the internet at his sole cost and responsibility; and

bbb.  Award Plaintiff any other relief that is deemed equitable and just.

## ILLINOIS STATUTORY CLAIMS
### COUNTS X - XII

### COUNT X
### VIDEO 2

414.     Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 414, here.

415.     For the reasons set forth above, JONES violated Illinois statute 740 ILCS 190/1et. seq. when he knowingly and purposefully recorded VIDEO 2 without Jane's knowledge or consent and disseminated VIDEO 2 to the Tortfeasor's without Jane's knowledge or consent.

416.     Upon information and belief, Jones and/or the Tortfeasors uploaded VIDEO 2 to OnlyFans for their respective financial gain.

417.     As stated above, Jane is identifiable as the individual depicted in VIDEO 2.

418.     As stated above, Jane suffered extreme emotional damage and actual damage due to Jones's actions.

419.     Jane incurs attorneys fees and costs for having to bring this Complaint.

420.     Jane brings this Complaint within 740 ILCS 190/1 et. seq. statute of limitations as this Complaint was filed less than 2 years since her discovery of Jones's actions.

WHEREFORE, with regard to Count X of this Complaint, Plaintiff Jane Doe demands judgment against Jones and prays this Court:

ccc.     Find Jones liable for violating 740 ILCS 190/30 *et. seq.* for Jones's knowing and purposefully recording and disseminating VIDEO 2.

ddd.     Award Jane damages the greater of her economic or noneconomic damages, including her emotional distress; or $10,000.00 in statutory liquidated damages; or an amount equal to any financial gain Jones received for disseminating VIDEO 2 to Only Fans.

eee.    Award Jane punitive damages.

fff.    Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

ggg.    Require Jones to take all reasonable actions to remove VIDEO 2 from the internet at his sole cost and responsibility; and

hhh.    Award Plaintiff any other relief that is deemed equitable and just.

COUNT XI
VIDEO 3

421.    Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 421, here.

422.    For the reasons set forth above, JONES violated Illinois statute 740 ILCS 190/1et. seq. when he knowingly and purposefully recorded VIDEO 3 without Jane's knowledge or consent and disseminated VIDEO 3 to the Tortfeasors without Jane's knowledge or consent.

423.    Upon information and belief, Jones and/or the Tortfeasors uploaded VIDEO 3 to OnlyFans for their respective financial gain.

424.    As stated above, Jane is identifiable as the individual depicted in VIDEO 3.

425.    As stated above, Jane suffered extreme emotional damage and actual damages due to Jones's actions.

426.    Jane incurs attorneys fees and costs for having to bring this Complaint.

427.    Jane brings this Complaint within 740 ILCS 190/1 et. seq. statute of limitations as this Complaint was filed less than 2 years since her discovery of Jones's actions.

WHEREFORE, with regard to Count XI of this Complaint, Plaintiff Jane Doe demands judgment against Jones and prays this Court:

iii.    Find Jones liable for violating 740 ILCS 190/30 *et. seq.* for Jones's knowing and purposefully recording and disseminating VIDEO 3.

jjj.    Award Jane damages the greater of her economic or noneconomic damages, including her emotional distress; or $10,000.00 in statutory liquidated damages; or an amount equal to any financial gain Jones received for disseminating VIDEO 3 to Only Fans.

kkk.    Award Jane punitive damages.

lll.    Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

mmm. Require Jones to take all reasonable actions to remove VIDEO 3 from the internet at his sole cost and responsibility; and

nnn.    Award Plaintiff any other relief that is deemed equitable and just.

## COUNT XII
## VIDEO 6

428.    Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 428, here.

429.    For the reasons set forth above, JONES violated Illinois statute 740 ILCS 190/1et. seq. when he knowingly and purposefully recorded VIDEO 6 without Jane's knowledge or consent and disseminated VIDEO 6 to the Tortfeasor's without Jane's knowledge or consent.

430.    Upon information and belief, Jones and/or the Tortfeasors uploaded VIDEO 6 to OnlyFans for their respective financial gain.

431.    As stated above, Jane is identifiable as the individual depicted in VIDEO 6.

432.    As stated above, Jane suffered extreme emotional damage and actual damages due to Jones's actions.

433.    Jane incurs attorneys fees and costs for having to bring this Complaint.

434.    Jane brings this Complaint within 740 ILCS 190/1 et. seq. statute of limitations as this Complaint was filed less than 2 years since her discovery of Jones's actions.

WHEREFORE, with regard to Count XII of this Complaint, Plaintiff Jane Doe demands judgment against Jones and prays this Court:

ooo.    Find Jones liable for violating 740 ILCS 190/30 *et. seq.* for Jones's knowing and purposefully recording and disseminating VIDEO 6.

ppp.    Award Jane damages the greater of her economic or noneconomic damages, including her emotional distress; or $10,000.00 in statutory liquidated damages; or an amount equal to any financial gain Jones received for disseminating VIDEO 6 to Only Fans.

qqq.    Award Jane punitive damages.

rrr.    Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

sss.    Require Jones to take all reasonable actions to remove VIDEO 6 from the internet at his sole cost and responsibility; and

ttt.    Award Plaintiff any other relief that is deemed equitable and just.

## COLORADO STATUTORY CLAIMS

### COUNTS XIII– XIV

COUNT XII
VIDEO 4

435.    Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 435, here.

436.    For the reasons set forth above, JONES violated C.R.S. 13-21-1400 et. seq. when he knowingly and purposefully recorded VIDEO 4 without Jane's knowledge or consent and disseminated VIDEO 4 to the Tortfeasors without Jane's knowledge or consent.

437.    Upon information and belief, Jones and/or the Tortfeasors uploaded VIDEO 4 to OnlyFans for their respective financial gain.

438.  As stated above, Jane is identifiable as the individual depicted in VIDEO 4.

439.  As stated above, Jane suffered extreme emotional damage and actual damages due to Jones's actions.

440.  Jane incurs attorneys fees and costs for having to bring this Complaint.

441.  Jane brings this Complaint within C.R.S. 13-21-1400 et. seq. statute of limitations as this Complaint was filed less than 6 years since her discovery of Jones's actions.

WHEREFORE, with regard to Count XIII of this Complaint, Plaintiff Jane Doe demands judgment against Jones and prays this Court:

uuu.  Find Jones liable for violating C.R.S. 13-21-1400 *et. seq.* for Jones's knowing and purposefully recording and disseminating VIDEO 4.

vvv.  Award Jane damages the greater of her economic or noneconomic damages, including her emotional distress; or $10,000.00 in statutory liquidated damages; or an amount equal to any financial gain Jones received for disseminating VIDEO 4 to Only Fans.

www.  Award Jane punitive damages.

xxx.  Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

yyy.  Require Jones to take all reasonable actions to remove VIDEO 4 from the internet at his sole cost and responsibility; and

zzz.  Award Plaintiff any other relief that is deemed equitable and just.

## COUNT XIV
### VIDEO 5

442.  Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 442, here.

443. For the reasons set forth above, JONES violated C.R.S. 13-21-1400 et. seq. when he knowingly and purposefully recorded VIDEO 5 without Jane's knowledge or consent and disseminated VIDEO 5 to the Tortfeasors without Jane's knowledge or consent.

444. Upon information and belief, Jones and/or the Tortfeasors uploaded VIDEO 5 to OnlyFans for their respective financial gain.

445. As stated above, Jane is identifiable as the individual depicted in VIDEO 5.

446. As stated above, Jane suffered extreme emotional damage and actual damages due to Jones's actions.

447. Jane incurs attorneys fees and costs for having to bring this Complaint.

448. Jane brings this Complaint within C.R.S. 13-21-1400 et. seq. statute of limitations as this Complaint was filed less than 6 years since her discovery of Jones's actions.

WHEREFORE, with regard to Count XIV of this Complaint, Plaintiff Jane Doe demands judgment against Jones and prays this Court:

aaaa. Find Jones liable for violating C.R.S. 13-21-1400 *et. seq.* for Jones's knowing and purposefully recording and disseminating VIDEO 5.

bbbb. Award Jane damages the greater of her economic or noneconomic damages, including her emotional distress; or $10,000.00 in statutory liquidated damages; or an amount equal to any financial gain Jones received for disseminating VIDEO 5 to Only Fans.

cccc. Award Jane punitive damages.

dddd. Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

eeee.   Require Jones to take all reasonable actions to remove VIDEO 5 from the
internet at his sole cost and responsibility; and

ffff.   Award Plaintiff any other relief that is deemed equitable and just.

## CALIFORNIA STATUTORY CLAIM
### COUNT XV

449.   Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 449, here.

450.   For the reasons set forth above, ALVAREZ violated C.A. CIV. CODE 1708.85
when he knowingly and purposefully disseminated Videos 1-8 and Photos 1 and 2 to the other
Tortfeasors' while living in the state of California without Jane's knowledge or consent.

451.   Upon information and belief, ALVAREZ and/or the Tortfeasors uploaded Videos
1-8 and/or Photos 1-2 OnlyFans for their respective financial gain.

452.   As stated above, Jane is identifiable as the individual depicted in all of the videos
and photos in this Complaint.

453.   As stated above, the Tortfeasors knew or should have known that Jane did not
consent to any of these videos or photos being disseminated.

454.   As stated above, Jane suffered extreme emotional damage and actual damages due
to ALVAREZ's actions.

455.   Jane incurs attorneys fees and costs for having to bring this Complaint.

456.   Jane brings this Complaint within C.A. CIV. CODE 1708.85 statute of limitations
as this Complaint was filed less than 2 years since her discovery of Alvarez's actions.

WHEREFORE, with regard to Count XV of this Complaint, Plaintiff Jane Doe demands
judgment against Alvarez and prays this Court:

gggg. Find Jones liable for violating C.A. CIV. CODE 1708.85. for Alvarez's knowing and purposefully dissemination of Videos 1-8 and Photos 1 and 2;

hhhh. Award Jane damages the greater of her economic or noneconomic damages, including her emotional distress;

iiii. Award Jane punitive damages.

jjjj. Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

kkkk. Award Plaintiff any other relief that is deemed equitable and just.

## **COMMON LAW CLAIMS**

### **COUNTS XVI - XX**

### CIVIL CONSPIRACY
### COUNT XVI

457. Plaintiff Jane re-alleges and incorporate the facts set forth in ¶¶ 1-296 as ¶ 457, here.

458. For the reasons set forth above, the Tortfeasors engaged in a sophisticated civil conspiracy to create, share, and profit off of illegally obtained private images depicting both Jane Doe with intent and/or reckless knowledge that their actions would cause Jane injury and harm.

459. Evidence of the Tortfeasor's conspiracy is demonstrated by their own words, as documented above, Jones and Sarnello planned on more-than-one occasion to secretly record and share their respective sexual encounters with Jane and Jessica with each other.

460. Alvarez and Corcoran-Sipe also benefitted from Jones and Sarnello's content by being a part of the Trio Group Chat and the Trio Snapchat where this content was shared and enjoyed by them.

461.    All of the Tortfeasors demonstrated their agreement and intent to violate to §
1309 of the Violence Against Women Act , 740 ILCS 190/20, and C.R.S. 13-21-1405, C.A. CIV.
CODE 1708.85 and commit the common law torts of sexual battery (video 6), intentional
infliction of emotional distress ("IIED") or, negligent infliction of emotional distress ("NIED")
(videos 1-8, photo 1) and intrusion upon seclusion (videos 1-8, photos 1,2) with a specific
purpose to injure Jane Doe through the over acts of secretly recording, disseminating, sharing,
and/or transferring or uploading the content. And by stealing Photo 2 from Jane's personal
device and disseminating it without her knowledge or consent.

462.    All of the Tortfeasor's actions mentioned in the above paragraphs caused Jane
extreme emotional distress and actual damages.

463.    Jane Doe had a reasonable expectation of privacy in keeping PHOTO 2 on her
personal phone. As discussed above, Jane never sent PHOTO 2 to anyone, let alone Jones or the
Tortfeasors.

464.    All of the Tortfeasors were in their mid-to-late twenties at the time of the actions
underlying this Complaint. In other words, they are and have been of majority age.

465.    As stated above, Jane, Jessica and Betty are identifiable in the content discussed
in this Complaint. Jane knows each Tortfeasor personally.

466.    Jane incurs attorneys fees and costs for having to bring this Complaint.

WHEREFORE, with regard to Count XVI of this Complaint, Plaintiff Jane Doe demands
judgment against the Tortfeasors and prays this Court:

a.    Find the Tortfeasors liable for civil conspiracy for the reasons set forth in
this count;

b.　　Award both Jane economic, incurred, prospective, and punitive damages against all Tortfeasors in a manner which would require them to be jointly and severally liable to Jane and Betty;

c.　　Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

d.　　Require Jones to take all reasonable actions to remove the illegally procured content which forms the basis of this Complaint from the internet at his sole cost and responsibility; and

e.　　Award Plaintiff any other relief that is deemed equitable and just.

COUNT XVII
SEXUAL BATTERY

467.　　Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 467, here.

468.　　As discussed above, Jones forcibly raped Jane while she was on conscious on or about January 14, 2023.

469.　　This rape is a sexual battery.

470.　　Jane did not consent to Jones's forcible penetration as she was unconscious and intoxicated.

471.　　Jane did not consent to Jones performing oral sex on her.

472.　　Jane did not consent to Jones kissing her, hugging her, or conducting any other sexual actions during this night.

473.　　Jones knew Jane did not and could not consent to the forcible penetration, the oral sex, the touching, hugging or kissing, as Jane was unconscious and intoxicated.

474.　　Jones's intent is demonstrated by his text messages to Sarnello, discussed above.

475.　　Jones's rape of Jane is a touch that is offensive to the reasonable person.

476. Jones's rape of Jane is in actuality both an offensive and harmful contact.

477. Jones's rape caused Jane harm.

478. As stated above, Jane suffered extreme emotional damage and actual damages due to the Tortfeasor's actions.

479. Jane incurs attorneys fees and costs for having to bring this Complaint.

480. Jane's Complaint is timely as it is brought within 2 years from discovering that she was a victim of Jones's rape.

481. Jones must be liable for the personal injury he caused Jane.

WHEREFORE, with regard to Count XVII of this Complaint, Plaintiff Jane Doe demands judgment against Jones and prays the Court:

f. Find Jones liable sexually battering Jane when he forcibly raped her on January 14, 2023.

g. Award Jane both economic, incurred, prospective, and punitive damages;

h. Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

i. Require Jones to take all reasonable actions to remove VIDEO 6 from the internet at his sole cost and responsibility; and

j. Award Plaintiff any other relief that is deemed equitable and just.

## COUNT XVIII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, OR NEGLIGENT INFLICTION OF EMTIONAL DISTRESS IN THE ALTERNATIVE

482. Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 482, here.

483. As discussed above, all of the Defendants caused Jane extreme emotional distress.

484.    For the reasons discussed above, the Defendants' conduct was extreme, outrageous, unconscionable, and outside the scope of anything acceptable in society.

485.    For the reasons discussed above, the Defendants' knew or should have known that their misconduct would cause Jane extreme emotional distress.

486.    For the reasons discussed above, it was foreseeable that the Defendants' conduct would cause Jane extreme emotional distress.

487.    Jane incurs attorneys fees and costs for having to bring this Complaint.

488.    Plaintiff's Complaint is timely as it is brought within 2 years from discovering the Defendants tortious actions.

489.    The Defendants must be found liable for their intentional and/or negligent extreme and unconscionable actions that caused both Jane and Betty injury.

WHEREFORE, with regard to Count XVIII of this Complaint, Plaintiff Jane demands judgment against the Defendants and requests this Court:

k.      Find all of the Defendants liable for intentional infliction of emotional distress and/or negligent infliction of emotional distress for all of the conduct discussed in this Complaint;

l.      Award Jane economic, incurred, prospective, and punitive damages;

m.      Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

n.      Require Jones to take all reasonable actions to remove all of the videos and photos from the internet at his sole cost and responsibility; and

o.      Award Plaintiff any other relief that is deemed equitable and just.

COUNT XIX

INTRUSION UPON SECLUSION

490.     Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 490, here.

491.     As discussed above, the Defendants caused Jane extreme emotional distress.

492.     For the reasons discussed above, the Defendants' conduct was extreme, outrageous, unconscionable, and outside the scope of anything acceptable in society.

493.     For the reasons discussed above, the Defendants knew or should have known that their misconduct would cause Jane extreme emotional distress.

494.     For the reasons discussed above, it was foreseeable that the Defendants' conduct would cause Jane emotional distress.

495.     Jane had a reasonable expectation of privacy for every piece of content that was secretly recorded and/or disseminated by the Tortfeasors in this case.

496.     Jane did not consent to the video recording of many of these videos. She did not consent to any of the videos being shared.

497.     Jane had a reasonable expectation of privacy that the sexual encounters she shared with Jones would remain private between them.

498.     Jane had a reasonable expectation of privacy that Jones would not rape her and publicize it as seen in Video 6.

499.     Jane had a reasonable expectation of privacy that PHOTO 1 she shared with Jones would remain private between them.

500.     Jane incurs attorneys fees and costs for having to bring this Complaint.

501.     Jane's Complaint is timely as it is brought within 2 years from discovering the Defendants' tortious actions.

78

502.     The Defendants must be found liable for their intentional intrusion upon both Jane and Betty's private photos and videos that caused them both injury.

WHEREFORE, with regard to Count XIX of this Complaint, Plaintiff Jane demands judgment against the Defendants and requests this Court:

      p.     Find the Tortfeasors liable for intrusion upon seclusion for all of the conduct discussed in this Complaint;

      q.     Award Jane economic, incurred, prospective, and punitive damages;

      r.     Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

      s.     Require Jones to take all reasonable actions to remove all of the videos and photos from the internet at his sole cost and responsibility; and

      t.     Award Plaintiff any other relief that is deemed equitable and just.

COUNT XX

PREMISES LIABILITY

503.     Jane re-alleges and incorporates the facts set forth in ¶¶ 1-296 as ¶ 503, here.

504.     As discussed above, the Tortfeasors caused Jane extreme emotional distress.

505.     For the reasons discussed above, the Tortfeasors' conduct was extreme, outrageous, unconscionable, and outside the scope of anything acceptable in society.

506.     For the reasons discussed above, the Tortfeasors' knew or should have known that their misconduct would cause Jane extreme emotional distress.

507.     For the reasons discussed above, it was foreseeable that the Tortfeasors' conduct would cause Jane extreme emotional distress.

508.     Homeowners had a duty to protect Jane as a recurring guest in their home.

509.    Homeowners breached that duty when they failed to protect Jane from Jones's tortious actions.

510.    Homeowners knew or should have known that Jones was committing the torts in their home.

511.    Jones's torts were foreseeable and a proximate cause of Jane's injuries.

512.    Homeowners had an insurance policy on their home to protect victims of intentional torts that occur on their property.

513.    Homeowners are liable to Jane for the injuries she incurred on their property.

514.    Jane incurs attorneys fees and costs for having to bring this Complaint.

515.    Jane's Complaint is timely as it is brought within 2 years from discovering the Defendants' tortious actions.

WHEREFORE, with regard to Count XX of this Complaint, Jane demands judgment against the Homeowners and requests this Court:

u.      Find Homeowners liable for intentional torts that occurred on their property and discussed throughout this Complaint on a theory of premises liability;

v.      Award Jane economic, incurred, prospective, and punitive damages;

w.      Award Jane reasonable attorneys fees and costs for having to bring this Complaint;

x.      Require Jones to take all reasonable actions to remove all of the videos and photos from the internet at his sole cost and responsibility; and

y.      Award Jane any other relief that is deemed equitable and just.

## **JURY TRIAL DEMAND**

The Plaintiff demands a trial by jury.

## **CONCLUSION**

The Plaintiff prays this Court grant their Complaint in the entirety and award the damages

requested therein.

Respectfully submitted,

JANE DOE

One of Plaintiff's Attorneys

**PREPARED BY:**
**SPITZER LAW P.C.**
**JEREMY N. SPITZER (6300931)**
**JULIA M. KEENAN (6336156)**
**1585 N. Milwaukee Ave Suite 114**
**Libertyville, IL 60048**
**(224) 424-0199**
**jeremy@spitzerlawpc.com**
**julia@spitzerlawpc.com**