UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JANE DOE,

      Plaintiff,

      v.

THOMAS C. JONES JR., et al.,

      Defendants.

No. 25 C 14319

Judge Thomas M. Durkin

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jane Doe brings a wide variety of federal and state claims against Thomas Jones, Jr. ("Jones"), Joseph Sarnello, Jr., Adrian Alvarez, Kegan Corcoran-Sipe, Thomas Jones, Sr. ("Jones Sr."), and Jennifer Jones ("Jennifer") (collectively, "Defendants") as a result of intimate videos of Doe being recorded and disseminated without her consent. Doe refers to Jones, Sarnello, Alvarez, and Corcoran-Sipe collectively as "Tortfeasors" and Jones Sr. and Jennifer together as "Homeowners." Defendants each move to dismiss the complaint pursuant to Rules 12(b)(2) and 12(b)(6). Counts I–IX are federal statutory claims for the nonconsensual dissemination of videos of Doe against the Tortfeasors; Counts X–XIV are Illinois and Colorado state statutory claims for the nonconsensual dissemination of videos of Doe against Jones; Count XV is a California state statutory claim for the nonconsensual dissemination of videos of Doe against Alvarez; Count XVI is for civil conspiracy against the Tortfeasors; Count XVII is for sexual battery against Jones; Count XVIII is for intentional or negligent infliction of emotional distress against Defendants;

1

Count XIX is for intrusion upon seclusion against Defendants; and Count XX is for premises liability against the Homeowners. For the following reasons, Jones's, and Sarnello's motions are denied; Alvarez's and Corcoran-Sipe's motions are granted in part and denied in part; and Jones Sr.'s and Jennifer's motion is granted.[1]

## Background

Doe and Jones grew up in Lake County, Illinois. R. 4 ¶¶ 1, 15. They met and began a romantic relationship while in high school in 2016. *Id.* ¶¶ 14, 17. Both later attended Cornell College in Iowa, where Jones formed friendships with members of

---

[1] As a preliminary matter, the Court notes that the briefs of the Defendants include quotations that do not appear to exist and other false statements regarding case holdings. *See, e.g.*, R. 55 at p. 5 (citing *KMEnters., Inc. v. Global Traffic Techs.*, Inc., 725 F.3d 718, 733 (7th Cir. 2013) for "rejecting conspiracy jurisdiction absent defendant-specific forum conduct" but the case does not reference conspiracy); R. 55 at p. 8 (quoting *Loubser v. Thacker*, 440 F.3d 439, 443 (7th Cir. 2006) as requiring factual allegations suggesting a "meeting of the minds" but that phrase appears nowhere in the opinion); R. 69 at p. 3 (quoting *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) as stating courts "are not obligated to do [plaintiff's] research" but the quote does not appear in the opinion); R. 70 at p. 2 (quoting *Braun v. Village of Palatine*, 56 F.4th 542, 553 (7th Cir. 2022) as stating the Seventh Circuit has "repeatedly held that a plaintiff who fails to respond to a defendant's arguments for dismissing a claim forfeits that claim" but the quote does not appear in the opinion); R. 70 at pp. 2–3 (quoting *Lekas v. Briley*, 405 F.3d 602, 614–15 (7th Cir. 2005) as stating "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived" but the quote does not appear in the opinion); R. 83 at p. 6 (quoting *McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (1999) as stating "a meeting of the minds, a common understanding or mutual assent to a common purpose" but that quote does not appear in the cited case or any federal or state case); R. 83 at p. 6 (quoting *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54, 62 (1994) as stating "Mere knowledge of a tortious act, acquiescence in it, or association with the person committing it" is insufficient, but the quote does not appear in the opinion). The Court reminds the parties of their obvious Rule 11 obligation to ensure that all the arguments they make are properly and correctly supported by legal authority. The Court will consider at a later time any response Defendants have to these observations and appropriate sanctions.

his baseball team: Sarnello, Alvarez, and Corcoran-Sipe. *Id.* ¶¶ 3–5, 18–19, 32. Upon graduating college in 2021, Doe and Jones moved back their respective parents' homes in Illinois until they moved to Colorado together in July 2023. *Id.* ¶¶ 18, 20–22.

On July 23, 2024, Doe discovered that Jones had allegedly been filming some of their sexual encounters without her knowledge or consent and exchanging them with his friends over the course of years, going back to at least 2021. *Id.* ¶¶ 46–52; R. 62 at p. 14. Doe found a text message group chat named "Trio" between Jones, Alvarez, and Corcoran-Sipe in which Jones sent at least 6 videos of Doe and Jones engaged in sexual intercourse, half of which were recorded and exchanged in Illinois, including an incident of sexual assault that occurred in Chicago, Illinois on January 14, 2023. R. 4 ¶¶ 52, 168. All three members of the group chat regularly exchanged illicitly obtained photos and videos of their sexual experiences with their respective partners and other unknown women. *Id.* ¶ 50. They also had a SnapChat group—also named Trio—where this self-made illicit content was exchanged and stored. *Id.* ¶¶ 42, 50, 54, 58.

Jones maintained separate text message and SnapChat threads with Sarnello in which the same content was exchanged. *Id.* ¶¶ 43, 45, 52. Sarnello shared videos of sexual activity with his then-girlfriend, actively solicited videos of Doe, and encouraged Jones's actions. *Id.* ¶¶ 53, 66, 82, 101, 104, 119, 134, 153, 169–70, 191, 233, 242.

3

Doe alleges that at least one of the videos of her was recorded in the home of Jones's parents: Jones Sr. and Jennifer. *Id.* ¶¶ 6, 79. While some of the videos were recorded after Doe and Jones became residents of Colorado in July of 2023, at least two of the videos were recorded before that date when Doe was domiciled in Illinois. *See id.* ¶¶ 22, 82, 168.[2]

Doe confronted Jones and ended her relationship with him the following day, July 24, 2024. *Id.* ¶¶ 46, 55, 57. On December 4, 2025, Doe filed suit against Jones, Sarnello, Alvarez, Corcoran-Sipe, Jones Sr., and Jennifer alleging 20 claims in total: federal and state statutory claims for disclosure of intimate visual depictions, conspiracy, sexual battery, intentional infliction of emotional distress, negligent infliction of emotional distress, intrusion upon seclusion, and premises liability. R. 4. Defendants separately move to dismiss. R. 36, 47, 50, 51, 54.

## Discussion

I.  Personal Jurisdiction

Sarnello, Alvarez, and Corcoran-Sipe separately argue that they are not subject to personal jurisdiction, and therefore the complaint should be dismissed pursuant to Rule 12(b)(2). *See* Fed. R. Civ. P. 12(b)(2).

"A complaint need not include facts alleging personal jurisdiction. However, once the defendant moves to dismiss the complaint under Federal Rule of Civil

---

[2] According to Doe, it is possible there are more videos both from when she was domiciled in Illinois and when she was living in Colorado. She originally discovered the alleged conspiracy when she was using her laptop—which was synched with Jone's iPhone—and a notification from the Trio group chat popped-up on the screen. Doe screenshotted parts of the offending chats, but it is possible that additional photos and/or videos exist. R. 4 ¶¶ 46–55.

Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). When a determination is made without an evidentiary hearing, the plaintiff need only establish a prima facie case of personal jurisdiction. *Id.* The court reads "the complaint liberally, in its entirety, and with every inference drawn in favor" of the plaintiff to determine whether it has set forth a prima facie case of personal jurisdiction. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 877–78 (7th Cir. 2006). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783.

Doe asserts that these three out-of-state defendants are subject to personal jurisdiction in Illinois because "many of the torts occurred in Illinois, the conspiracy itself started in Illinois, and the dissemination of videos/photos through each [Defendant]'s electronic devices were always directed to injure an Illinois resident."[3] R. 62 at p. 10. The Illinois long-arm statute permits jurisdiction over out-of-state defendants to the full extent permitted by the Fourteenth Amendment's Due Process Clause when they commit tortious acts within the state. 735 ILCS 5/2-209(a)(2);

---

[3] Doe also argues that Sarnello is a "co-resident" of Illinois because he grew up in Illinois and his parents still live in the state. R. 62 at pp. 7 & n.3. However, the relevant analysis for jurisdiction is Sarnello's domicile, which is not where he is from, but where he intends to remain. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)*; Dakuras v. Edwards*, 312 F.3d 256, 258 (7th Cir. 2002). Sarnello resided in Utah during the relevant period, and he now resides in Arizona. R. 76 at p. 3.

5

*Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 393 (7th Cir. 2020). Consistent with federal due process, the defendant must have minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 394–95 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The defendants all argue that they did not reside in Illinois during the relevant period, conduct relevant activity in Illinois, or distribute content from Illinois. *See* R. 36 ¶ 4; R. 47 at p. 6; R. 55 at p. 4. But the defendants' physical presence in Illinois is not required. *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017). What is required is sufficient minimum contacts such that a defendant "should reasonably anticipate being haled into court" in Illinois. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980))). Courts consider whether the defendant has "purposefully directed" his activities at the state even in the "absence of physical contacts." *Curry*, 949 F.3d at 398 (citations omitted); *see also Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802–03 (7th Cir. 2014) (finding that "the traditional due process inquiry" applies to cases involving Internet contacts and the key inquiry is "[h]as the defendant, in brief, targeted [the forum state] somehow?").

This purposeful direction is established because defendants committed tortious acts against Doe in Illinois. *See Calder v. Jones*, 465 U.S. 783, 789 (1984) (finding personal jurisdiction over out-of-state defendants who "expressly aimed" their "intentional, and allegedly tortious, actions" at the forum state by publishing a

6

libelous article against a resident of the forum state); *Advanced Tactical*, 751 F.3d at 803 (stating that jurisdiction may have been proper if "there were evidence that a defendant in some way targeted residents of a specific state"). "[J]urisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum" and that "[t]he strength of that connection [is] largely a function of the nature of the . . . tort." *Walden v. Fiore*, 571 U.S. 277, 286–87 (2014). The Supreme Court reasoned that jurisdiction in *Calder* was appropriate in a libel suit because the forum state was "the focal point both of the story and of the harm suffered." *Id.* at 287. Because "[t]he crux of *Calder*" was reputational harm based on libel published in California, "the defendants' intentional tort actually occurred *in* California." *Id.* at 287–88; *see also Tamburo v. Dworkin*, 601 F.3d 693, 697 (7th Cir. 2010) (relying on *Calder* to find a prima facie case of personal jurisdiction over foreign defendants for intentional torts committed via the Internet because defendants knew "that [plaintiff] lived and operated his software business in Illinois and would be injured there").

Here, Doe was domiciled in Illinois when at least two of the videos were made and exchanged. Although she undoubtedly suffered reputational harm, the crux of the harm is an invasion of privacy of an Illinois resident. Illinois is both the focal point of the conspiracy to exchange videos of Doe and where the brunt of the harm was suffered. Jones recorded and shared a video of him and Doe engaging in sexual intercourse on June 25, 2021. R. 4 ¶ 82. The video was taken in Illinois when both Doe and Jones were domiciled in Illinois. *Id.* ¶¶ 21, 79. At least two more videos were

recorded in and shared from Illinois, and at least one of those was while Doe was still domiciled in the state. *Id.* ¶¶ 96, 168. As a result, Doe suffered emotional distress and an invasion of privacy in Illinois. This invasion of privacy spread to her friends, family, and community centered in Illinois as all were made aware that her high school sweetheart and close college friends were exchanging and viewing videos of her engaged in sexual activity over the course of multiple years. *See id.* ¶¶ 280–93. As friends of Doe and Jones, defendants knew the couple was domiciled in Illinois when they entered into the alleged conspiracy and when many videos of Doe were exchanged. Although social visits that defendants made to Illinois to visit Doe and Jones do not count as "minimum contacts" for this analysis because they are not suit-related, they do serve to show that defendants were well aware that the effects of their tortious acts would be felt in Illinois. *See* R. 45 at p. 2.

Because the exchange of videos began when Doe was domiciled in Illinois, defendants were aware that Doe would be harmed in Illinois, and must too have reasonably foreseen being haled into court in Illinois. *See Calder*, 465 U.S. at 789–90 (finding that defendants must have "reasonably anticipate[d] being haled into court" in the forum state because "the brunt of the harm, in terms both of [plaintiff]'s emotional distress and the injury to her . . . reputation, was suffered in [the forum state]."); *Bonilla v. Ancestry.com Operations Inc.*, 574 F. Supp. 3d 582, 590 (N.D. Ill. 2021) (finding personal jurisdiction over Ancestry.com for intrusion upon seclusion, among other claims, because by advertising and promoting to Illinois residents there was "reasonable foreseeability of harm felt in Illinois"); *see also Knaus v. Guidry*, 389

Ill. App. 3d 804, 823 (1st Dist. 2009) ("Surely those that join a conspiracy the purpose of which is to commit fraud or other tort in Illinois should, in some circumstances, reasonably foresee the possibility of being haled into court here. We therefore hold that in circumstances where the defendant has actively supported a conspiracy where one of its members operated in Illinois, there may exist the 'minimum contacts' necessary to fairly assert jurisdiction." (quoting *Cleary v. Philip Morris*, 312 Ill. App. 3d 406, 410 (1st Dist. 2000)).

Additionally, because Doe alleges tortious activity directed toward Illinois, exercising personal jurisdiction over the defendants "comport[s] with traditional notions of fair play and substantial justice." *See Bonilla*, 574 F. Supp. 3d at 590 (quoting *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014)); s*ee also Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 760 (7th Cir. 2010) ("[The 'fair play and substantial justice'] factors rarely will justify a determination against personal jurisdiction because there are other mechanisms available . . . to accommodate the various interests at play." (quoting *Purdue*, 338 F.3d at 781)) The relevant factors when considering fair play and substantial justice include "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Felland v. Clifton*, 682 F.3d 665, 677 (7th Cir. 2012). Illinois has a "strong interest in providing a forum for its residents . . . to seek redress for tort injuries

9

suffered within the state and inflicted by out-of-state actors." *Tamburo*, 601 F.3d at 709. And the most efficient resolution of this controversy would be to litigate within one suit.

Plaintiff has made a prima facie case of personal jurisdiction over Sarnello, Alvarez, and Corcoran-Sipe.

## II.     Failure to State a Claim

Defendants move to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "Facial plausibility exists 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 523 (7th Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678). In applying this

10

standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 666 (7th Cir. 2023).

### a. Intrusion Upon Seclusion

In Count XIX, Doe alleges the tort of intrusion upon seclusion against the Defendants. "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Lovgren v. Citizens First Nat'l Bank*, 126 Ill. 2d 411, 416 (1989) (citing Restatement (Second) of Torts § 652B, at 378 (1977)). The basis of the tort is not publication or publicity but rather the highly offensive prying into the private domain of another. *Id.* at 416–17 (citing Restatement (Second) of Torts § 652B, comments *a, b*, at 378–79 (1977)).

### i. Jones

Jones argues that Count XIX should be dismissed as a matter of law because some of the videos were recorded consensually. R. 51 at p. 4. Because the complaint "groups allegedly secret recordings with consensual ones," Jones argues, the count must be dismissed in its entirety. *Id.* But even if some of the videos were consensually recorded, not all of them were, and Jones does not argue that Doe consented to the dissemination of any of the videos. It is not required that *all* of Jones's conduct is tortious, only that *some* of it is. Even if Jones recorded one video without Doe's

11

consent, that constitutes an offensive prying into her private domain, and she has plausibly stated a claim of intrusion upon seclusion.

### ii. Sarnello, Alvarez, & Corcoran-Sipe

Sarnello and Corcoran-Sipe[4] separately argue that Doe does not allege that they intruded upon her privacy because they did not engage in "prying" but rather were passive recipients of content recorded and disclosed by Jones. R. 55 at p. 12; R. 47 at p. 12. This would be true if the allegations were that Jones sent videos to them unprompted; however, the allegations here detail a multi-year conspiracy in which Sarnello, Alvarez, and Corcoran-Sipe were exchanging videos with Jones and thus were actively prying into Doe's private affairs. Their participation in the tortious conspiracy indicates they were intentionally seeking illicit sexual videos and images from Jones, which would inherently include private videos of Doe. *See* R. 4 ¶ 223 (Doe "found hundreds of photos and videos featuring unknown women" in the Trio SnapChat.).

Sarnello further argues that his conduct is not "highly offensive." R. 55 at p. 13. That argument is a non-starter. Sarnello was actively requesting certain sexual positions for future surreptitious recordings. R. 4 Ex. 4. Seeking out and watching secret recordings of someone engaged in sexual activity is a prototypical example of a "highly offensive" invasion of privacy. *See Benitez v. KFC Nat'l Mgmt. Co.*, 305 Ill. App. 3d 1027, 1033 (2nd Dist. 1999) ("[C]ertainly voyeurism constitutes an 'offensive

---

[4] Alvarez filed his motion to dismiss pro se and does not make substantive arguments regarding intrusion upon seclusion. *See* R. 36, 83. However, the same analysis applies.

prying into the private domain of another.'" (quoting *Lovgren,* 126 Ill. 2d at 417)). Sarnello attempts to distinguish the instant case from *Benitez v. KFC National Management Co.*, 305 Ill. App. 3d 1027 (2nd Dist. 1999), in which the court found intrusion upon seclusion where defendants poked holes in the ceiling of the women's restroom and viewed and photographed the plaintiffs disrobing and using the restroom facilities, and *Acuff v. IBP, Inc.*, 77 F. Supp. 2d 914 (C.D. III. 1999), in which the court permitted intrusion upon seclusion claims to proceed based on hidden video surveillance of nurses performing medical examinations on patients. In those cases, the defendants actually poked a hole into the bathroom or set up a hidden camera in the ceiling. But someone who asked the defendants in *Benitez* to record the restroom and later viewed the recording, or who requested certain camera angles from the defendants in *Acuff*, would have been found liable as well. Although they were not the ones recording the videos, the facts as alleged indicate Sarnello, Alvarez, and Corcoran-Sipe were still "prying" into Doe's private domain.

Sarnello cites *Schiller v. Mitchell*, 357 III. App. 3d 435 (2nd Dist. 2005) and *Jacobson v. CBS Broadcasting, Inc.*, 2014 IL App (1st) 132480 for the proposition that "courts reject such claims where the defendant did not *personally* invade a private sphere," R. 55 at pp. 12–13 (emphasis added), but these cases say no such thing. In both *Schiller* and *Jacobson*, cameras recorded the outside of plaintiffs' respective properties, and the dispositive issue was not what actions the defendants took personally. Rather, it was that no private conduct was captured on film. *See Schiller*, 357 Ill. App. 3d at 441 ("[P]laintiffs in the instant case have not pleaded that

13

defendants' surveillance camera captured any private activity."); *Jacobson*, 2014 IL App (1st) at ¶ 48 ("[T]he videotape reveals no specific act that could be considered private."). Here, there is no question that Doe engaging in sexual activity is private. And notwithstanding, Doe alleges that the Tortfeasors *personally* invaded her private sphere by entering an agreement to obtain and view sexually explicit videos of her.

Sarnello last raises a statute of limitations issue based on 735 ILCS 5/13-201, but this statute pertains to defamation, not intrusion upon seclusion. *See Benitez*, 305 Ill. App. 3d at 1034 (holding that 735 ILCS 5/13-201 does not apply to intrusion upon seclusion). Intrusion upon seclusion falls under the general 2-year statute of limitations for torts in Illinois, *see* 735 ILCS 5/13-202, and Doe is within the limitations period because she filed her complaint less than 1.5 years after discovering the alleged tortious conduct, *see Johnson v. Northshore Univ. Healthsystem, Healthport, Inc.*, 405 Ill. App. 3d 1191, 997 N.E.2d 1005 (1st Dist. 2011) (finding an intrusion upon seclusion claim not time-barred when it was brought more than 1.5 years after plaintiff discovered the intrusion). The Court denies Sarnello's, Alvarez's, and Corcoran-Sipe's motions to dismiss count XIX.

i. Jones Sr. & Jennifer

Doe has not alleged that the Homeowners were aware of nor ever viewed any of the photos or videos in question. Therefore, she has not stated a claim for intrusion upon seclusion. The Court grants Jones Sr.'s and Jennifer's motion to dismiss count XIX.

b. Infliction of Emotional Distress

14

In Count XVIII, Doe alleges that the Defendants intentionally or negligently inflicted emotional distress upon her. To establish an IIED claim under Illinois law, a plaintiff must show: (1) extreme and outrageous conduct; (2) the defendant intended to inflict severe emotional distress or knew there was a high probability the conduct would cause it; and (3) the conduct did in fact cause severe emotional distress. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 268–69 (2003) (citations omitted). The conduct must be "so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community." *Kolegas v. Heftel Broad. Corp.*, 154 Ill. 2d 1, 21 (1992) (quoting Restatement (Second) of Torts § 46, cmt. d).

To establish an NIED claim, a plaintiff must show duty, breach, causation, and damages. *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, ¶ 31 (citing *Corgan v. Muehling*, 143 Ill. 2d 296, 306 (1991)). Additionally, a plaintiff who is a direct victim (i.e., not a bystander) of NIED must include an allegation of contemporaneous physical injury or impact. *Id.* ¶ 38.

i. Jones

Jones does not contest IIED on the merits, but instead asserts that Doe engaged in impermissible group pleading. R. 51 at pp. 13–14. While the pleadings are at times less clear as to the other defendants, they are sufficiently clear as to Jones. The allegations that Jones recorded and disclosed sexually intimate videos of Doe, his longtime girlfriend, without her consent are sufficient to state a claim of IIED because this conduct is extreme and outrageous, would and did cause Doe severe emotional distress, and is intolerable in a civilized community. *See Waterbury v. New York City*

*Ballet, Inc.*, 205 A.D.3d 154, 165 (2022) (sustaining a claim of IIED based on "the repeated recording and dissemination of intimate images of [plaintiff] without her knowledge or consent"); *Goodnight v. Hammons*, No. CIV-25-475-D, 2025 WL 2735608, at *6 (W.D. Okla. Sept. 25, 2025) (finding allegations that defendant disclosed plaintiff's intimate images to unknown third parties to be "sufficiently egregious—as well as sufficiently harmful"—to state a claim for IIED).

Jones further argues that the NIED claim must be dismissed because there was no "contemporaneous physical injury or impact." R. 51 at p. 13. But Doe alleges that Jones committed sexual battery against her, and Jones does not move to dismiss the claim. A sexual battery that is recorded and disclosed to others is a contemporaneous physical injury or impact. The Court denies Jones's motion to dismiss the IIED/NIED claim.

ii.  Sarnello, Alvarez, & Corcoran-Sipe

Sarnello and Corcoran-Sipe[5] separately argue that the allegations against them, even if true, are insufficient to rise to a level that is "so extreme as to go beyond all bounds of decency." R. 55 at p. 11; *see also* R. 47 at pp. 11–12. Sarnello characterizes himself as "a passive recipient who commented on content created and transmitted by [Jones]." R. 55 at p. 11. If that was an accurate description of Doe's allegations, then he would be correct. However, Doe alleges that the Tortfeasors engaged in a multi-year conspiracy in which they actively solicited, viewed, and

---

[5] Alvarez filed his motion to dismiss pro se and does not make substantive arguments regarding IIED/NIED. *See* R. 36, 83.  However, the same analysis applies.

16

disclosed private sexual videos and images of her without her knowledge and consent. Doe believed that Sarnello, Alvarez, and Corcoran-Sipe were her friends while they were encouraging her boyfriend to secretly film her during sexual intercourse. R. 4 ¶ 35. Sarnello even praised Jones for sexually assaulting her while she "looked dead" and "like she wasn't ready for that pounding." *Id.* ¶¶ 169–71. Such allegations are so extreme as to go beyond all bounds of decency. *See Franciski v. Univ. of Chi. Hosps.*, 338 F.3d 765, 769 (7th Cir. 2003) ("Whether conduct is extreme and outrageous is judged on an objective standard based on all the facts and circumstances of a particular case.").

Sarnello further argues that he did not have any authority or control over Doe and therefore his conduct was not extreme or outrageous. R. 55 at p. 10. While this is a factor courts can consider when assessing outrageousness, it is not dispositive. *See Public Fin. Corp. v. Davis*, 66 Ill. 2d 85, 90 (1976) (explaining that extreme and outrageous conduct "*may* arise from an abuse of a position . . . [of] authority" (emphasis added)). Another factor to be considered is "the reasonableness of a defendant's belief that his objective is legitimate" and here, Sarnello cannot reasonably claim any legitimate objective for encouraging, soliciting, viewing, and disclosing nonconsensual recordings of Doe. *See Schweihs*, 2016 IL at ¶ 52.

Sarnello and Corcoran-Sipe additionally argue that they do not have the requisite duty, nor the contemporaneous physical impact, to sustain a claim of NIED. R. 55 at p. 11; *see also* R. 47 at p. 14. The complaint does not define what, if any, duty these defendants owed to Doe. *See Marshall v. Burger King Corp.*, 222 Ill. 2d 422,

436–37 (2006) (discussing Illinois' courts duty analysis). Because Doe failed to respond to the arguments regarding duty, the NIED claim is insufficient to survive the motion to dismiss. However, because Doe has sufficiently stated a claim for IIED, the Court denies Sarnello's, Alvarez's, and Corcoran-Sipe's motions to dismiss Count XVIII.

### iii. Jones Sr. & Jennifer

Doe does not allege that the Homeowners engaged in any conduct that could feasibly be considered extreme and outrageous. In fact, the only specific conduct she alleges from either parent is that Jennifer contacted Doe to express her "devastation" for Doe and her "disappointment in [her son]'s actions." R. 4 Ex. 6. That is not a tort. Doe's conclusory allegation that the Homeowners "knew or should have known" that their son was engaged in tortious conduct on his private cell phone lacks any plausible factual support. Doe argues that Jones Sr.'s role as a police officer means he would have extensive knowledge of criminal sexual assault and nonconsensual recording and disseminating videos. R. 4 ¶ 268. While that may be true, that alone certainly does not indicate he is automatically privy to the alleged illegal conduct of a third party. Doe has failed to plausible allege a claim of IIED against Jones Sr. and Jennifer. In fact, it is not even close.

In terms of NIED, Jones Sr. and Jennifer argue that they had no duty to Doe as homeowners just because their adult son, unbeknownst to them, harmed Doe in their home. R. 50 at p. 8. There is no legal support for Doe's claim to the contrary. Jones is not a minor. *See* 740 ILCS 115 (assigning liability to parents of a minor child).

18

And Doe does not allege that the house maintenance or layout put the Homeowners on notice that a nonconsensual recording that would later be disseminated would occur in their home. Further, the Homeowners argue that Doe did not suffer any requisite physical impact. R. 69 at p. 9. Although Doe argues that she suffers from various mental health diagnoses, reputational harm, anxiety, sleep disruption, and feelings of "loneliness, guilt, and shame," R. 62 at p. 18, these are emotional injuries, not physical impacts. *See Schweihs*, 2016 IL at ¶¶ 16, 44 (affirming dismissal of an NIED claim where plaintiff did not allege a physical injury or impact but suffered from emotional impact including PTSD, anxiety, and depression). The Court grants Jones Sr.'s and Jennifer's motion to dismiss Count XVIII.

    c.  Violence Against Women Act

In Counts I–IX, Doe alleges that the Tortfeasors are liable under § 1309 of the Violence Against Women Act ("VAWA") (codified at 15 U.S.C.A. § 6851), which creates a civil cause of action for "an individual whose intimate visual depiction is disclosed, in or affecting interstate or foreign commerce or using any means or facility of interstate or foreign commerce, without the consent of the individual, where such disclosure was made by a person who knows that, or recklessly disregards whether, the individual has not consented to such disclosure . . . ." *See* 15 U.S.C.A. § 6851(b)(1)(A). The term "disclose" means to transfer, publish, distribute, or make accessible. *Id*. at (a)(4).

    i.  Jones

Jones argues that Counts I–IX should be dismissed because the allegations are conclusory. R. 51 at pp. 10–11. While Jones concedes that 15 U.S.C.A. § 6851 is generally applicable, he maintains that the pleadings lack specificity for three reasons. *Id.*

First, Jones argues that the complaint falsely characterizes all of the video recordings as "secret," which is an improper legal conclusion. But whether or not the videos were recorded secretly is irrelevant under the statute, which creates a right of action for an individual whose "intimate visual depiction is disclosed" and "the fact that the individual consented to the creation of the depiction shall not establish that the person consented to its distribution." 15 U.S.C. § 6851(b)(1), (2)(A). Regardless of how the videos were created, Doe adequately pleads that she did not consent to their disclosure, which is sufficient to state a claim under the statute.

Second, Jones attempts to argue on behalf of his co-defendants that allegations that they accessed and viewed content "on information and belief" are insufficient. R. 51 at pp. 11–12. But this argument has no bearing on whether the allegations are sufficient as to Jones himself. Doe provides sufficient factual detail, including text screenshots, to plausibly state a claim that Jones disclosed videos of her without her consent.

Last, Jones argues that he is being improperly held "strictly liable" for the downstream acts committed by his co-defendants. R. 51 at p. 12. To the contrary, the allegations in the complaint sufficiently state a claim that Jones himself disclosed

videos of Doe without her consent in violation of 15 U.S.C. § 6851. Jones's arguments are unavailing, and Counts I–IX stand.

> ii. Sarnello, Alvarez, & Corcoran-Sipe

Doe alleges that Sarnello participated in uploading photos and videos he received from Jones to Snapchat, *see, e.g.*, R. 4 ¶¶ 119–121, which could fall under the statutory definition of "disclosure"—to "transfer, publish, distribute, or make accessible." 15 U.S.C. § 6851(a)(4). The text messages from Sarnello stating "I'm going to have to transfer them to Snap" (referring to photos and/or videos) and "I'll try snap rn . . . It went on snap too" provides a basis for the Court to reasonably infer that Sarnello regularly disclosed content of Doe via Snapchat. R. 4 ¶¶ 119–121, 233. Therefore, the Court denies Sarnello's motion to dismiss Counts I–IX.

Both Alvarez and Corcoran-Sipe correctly argue that Doe has not stated a claim against them under VAWA § 1309. The statute prohibits disclosing intimate visual depictions—meaning to "transfer, publish, distribute, or make accessible"— but does not mention viewing, receiving, or possessing them. 15 U.S.C. § 6851(a)(4); *cf. Lawler v. Univ. of Chi. Med. Ctr.*, 2017 IL 120745, ¶ 12 ("When statutory language is clear and unambiguous, a court may not depart from the plain language and meaning of the statute by reading into it exceptions, limitations, or conditions that the legislature did not express."). Doe alleges that Alvarez and Corcoran-Sipe were "knowingly and purposefully engaging [sic] with" intimate photos and videos of her, but she pleads no facts to support that they *disclosed* any. *See, e.g.*, R. 4 ¶ 309(b). And Doe does not provide a plausible basis to support that Alvarez or Corcoran-Sipe

uploaded any content to OnlyFans; merely having an OnlyFans account does not permit the Court to reasonably infer that they used that account to upload videos and/or photos of Doe.

Doe alleges that Alvarez and Corcoran-Sipe sent videos and/or photos of other women in the Trio group chat. R. 4 ¶¶ 50–51, 220–225. If true, those allegations could make Alvarez and Corcoran-Sipe liable to the women in those respective intimate depictions, but they do not grant Doe a cause of action. Illustratively, Doe alleges that Corcoran-Sipe sent "Photo 2" to the Trio group chat. *Id.* ¶ 213. But although "Betty" is nude in Photo 2, Doe is clothed and is not engaged in any sexually explicit conduct, therefore this does not qualify as a disclosure of an intimate visual depiction of Doe. *See* R. 4 ¶¶ 205–10; 15 U.S.C. § 6851(a)(5)–(6). Thus, the Court finds Alvarez's and Corcoran-Sipe's alleged conduct insufficient for Doe to state a claim under 15 U.S.C. § 6851.

Doe also argues that Sarnello, Alvarez, and Corcoran-Sipe are liable through a civil conspiracy.[6] R. 4 ¶¶ 457–66. As discussed, the Tortfeasors allegedly exchanged numerous videos over the course of multiple years, which permits the Court to reasonably infer an agreement was formed to record and share illicit videos of sexual partners. *See Geinosky v. City of Chi.*, 675 F.3d 743, 749 (7th Cir. 2012) (finding a plausible conspiracy based on "a pattern of harassment . . . over a period of months"

---

[6] Doe alleges a separate count of civil conspiracy; however, conspiracy is a mechanism for liability and not a standalone claim. *See Sonrai Sys., LLC v. Waste Connections, Inc.*, 658 F. Supp. 3d 604, 612 (N.D. Ill. 2023) ("[C]ivil conspiracy does not constitute a standalone claim under Illinois law.")

and noting that "*Iqbal* calls on us to apply our 'judicial experience and common sense.' 556 U.S. at 679"). And by sending videos of Doe, Jones committed an overt act in furtherance of the conspiracy. *See Fritz v. Johnston*, 209 Ill. 2d 302, 317 (2004) (stating that an element of conspiracy is "the actual commission of an overt unlawful act by *one* of the conspirators" (emphasis added)). But because VAWA does not provide for a conspiracy claim, the Court declines to read conspiracy liability into 15 U.S.C. § 6851. *See Craigville Tel. Co. v. T-Mobile USA, Inc.*, No. 19-CV-07190, 2023 WL 1863047, at *2 (N.D. Ill. Feb. 9, 2023) (declining to apply conspiracy liability to a federal act because the "Seventh Circuit has explained that '[n]ormally federal courts refrain from creating secondary liability that is not specified by statute.'" (quoting *Doe v. GTE Corp.*, 347 F.3d 655, 658–59 (7th Cir. 2003)). The Court grants Alvarez's and Corcoran-Sipe's motions to dismiss Counts I–IX.

d. State Statutory Claims

For the same reasons as the federal statutory claims, to the extent that Counts X–XIV allege violations of the Illinois and Colorado state nonconsensual dissemination statutes against Alvarez and Corcoran-Sipe, Doe also does not state a claim of direct liability. *See* 740 ILCS 190 (creating a cause of action for nonconsensual dissemination—meaning "publication or distribution to another person with intent to disclose"—of private sexual images); C.R.S. 13-21-1400 (creating a civil remedy for unauthorized disclosure—meaning "transfer, publication, or distribution to another person"—of intimate images). Count XV is based on the similar California state statute and is only pled against Alvarez. *See* Cal. Civ. Code

23

§ 1708.85 (creating a cause of action for distribution of material exposing private body parts or sexual acts of another without permission).

Doe again alleges that Sarnello, Alvarez, and Corcoran-Sipe are liable under the state statutes through a civil conspiracy. R. 4 ¶¶ 457–66. Although Doe has plausibly alleged a conspiracy, she has not shown that it is actionable under these statutes. In Illinois, "proof of civil conspiracy requires proof of an underlying tort." *Sonrai*, 658 F. Supp. 3d at 612 (citing *McClure v. Owns Corning Fiberglas Corp.*, 188 Ill. 2d 102, 133 (Ill. 1999)). Here, Doe is instead alleging civil conspiracy based on an underlying statutory violation. The Seventh Circuit considered the issue of whether civil conspiracy can be applied to a statutory violation in *CSY Liquidating Corp. v. Harris Trust & Savings Bank*, 162 F.3d 929 (7th Cir. 1998):

> This raises the interesting question whether the tort of conspiracy can be used to create the very remedy for a statutory violation that the legislature did not want created, provided only that the defendant committed the violation in concert with someone else. Certainly the orthodox definition of the tort ('a combination of two or more persons, by some concerted action, to accomplish some criminal or unlawful purpose, or to accomplish some purpose, not itself criminal or unlawful, by criminal or unlawful means,' *Hechler Chevrolet, Inc. v. General Motors Corp.*, supra, 337 S.E.2d at 748; *see also Adcock v. Brakegate, Ltd.*, supra, 645 N.E.2d at 894; *Operation Rescue-National v. Planned Parenthood of Houston & Southeast Texas, Inc.*, 975 S.W.2d 546, 553 (Tex. 1998); *Marshak v. Marshak*, 226 Conn. 652, 628 A.2d 964, 970-71 (Conn. 1993)) allows for this possibility. But we cannot find a case that actually discusses the propriety of using the conspiracy tort to create a private damages remedy for the violation of a statute that contains no private remedies without considering whether the addition of such a remedy would promote the policy of the statute rather than interfere with a carefully calibrated system of remedies or upset a legislative compromise. We doubt that the tort has so ambitious an office, which would put it on a collision course with legislative intent.

24

*Id.* at 931. None of the state statutes expressly permit conspiracy claims, and Doe has not provided any basis for the Court to determine that "the addition of such a remedy would promote the policy of the statute rather than interfere with a carefully calibrated system of remedies or upset a legislative compromise." *See id.* Therefore, the Court declines to use conspiracy to uphold Counts X–XIV against Sarnello, Alvarez, and Corcoran-Sipe, and Count XV is dismissed in its entirety.

e. Premises Liability

In Count XX, Doe alleges premises liability solely against the Homeowners. Under the Illinois Premises Liability Act, owners owe a duty of "reasonable care under the circumstances regarding the state of the premises or acts done or omitted on them" to entrants onto their property. 740 ILCS 130/2. A premises liability claim typically "arises from an injury attributable to an unsafe condition of the property itself." *Doe v. Bd. of Educ. of the Cmty Unit Sch. Dist. No.5*, 680 F. Supp. 2d 957, 994 (C.D. Ill. 2009) (citing cases) (recommending dismissal when an individual's "tortious conduct," not a condition of the property, caused the injury). Premises liability requires proof of duty, breach, an injury proximately caused by the breach, "plus three additional elements—that there was a *condition* on the property that presented an unreasonable risk of harm, that the defendant knew or reasonably should have known of the condition and the risk, and that the defendant could reasonably have expected people on the property would not realize, would not discover, or would fail to protect themselves from the danger. If it is a landowner's conduct or activity—as opposed to a dangerous condition on the property—that

25

creates the injury-causing hazard, the claim is one of negligence, rather than premises liability." *Garcia v. Goetz*, 2018 IL App (1st) 172204, ¶ 31 (citations omitted).

Doe readily concedes that "she can *better* plead her real-property based claims against Homeowners" and attempts to add a negligence claim in her response brief. R. 62 at p. 19. But a plaintiff may not amend her complaint through arguments raised for the first time in an opposition brief. *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012) (A "complaint may not be amended by the briefs in opposition to a motion to dismiss."). Therefore, the Court considers the premises liability claim as pled. Here, Doe alleges that Jones's tortious conduct caused her injury—not a condition of the property—and therefore she has not stated a claim for premises liability.

Doe argues that the Homeowners "had a duty to ensure Plaintiff was not a victim of intentional torts on their property." R. 62 at p. 20. The problem with Doe's argument is that she doesn't cite any authority to support such liability. The cases she cites are inapposite; they concern the heightened duty business owners owe to patrons and patrons who are harmed by the unforeseeable criminal or tortious actions of third parties in negligence cases. *See* R. 62 at pp. 19–22 (citing *Fox v. Food and Drink Chi., Inc.*, 2024 IL App (1st) 230755, ¶ 40 (explaining that "Illinois imposes no duty to protect others from the criminal acts of third parties unless a special relationship exists between the parties" such as a business owner and customer); *Witcher v. 1104 Madison St. Rest.*, 2019 IL App (1st) 181641, ¶ 14 (affirming a

judgment for a defendant restaurant because "the crime was not reasonably foreseeable" and the defendant had no duty to protect a victim from the criminal act of a third party); *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1145 (7th Cir. 2010) (permitting a negligence claim against a bar based on the special relationship between a business and invitee and foreseeability because the bartender knew that patrons were planning a criminal attack); *C.H. v. Pla-Fit Franchise, Ltd. Liability Co.*, 2017 IL App (3d) 160378 (affirming dismissal of premises liability and negligence claims because plaintiffs failed to plead physical injury and failed to state a claim that a tanning salon franchisee was liable for the criminal or tortious acts of third party who secretly videotaped them in the tanning rooms)). This case is not about patrons of a business. It is about owners of a private residence. And Doe has not cited any authority that homeowners are liable for criminal or tortious activity on their property that they were unaware of. If this is all that Doe has against the Homeowners, they should not have been sued and been forced to defend this lawsuit. The Court grants the motion to dismiss Count XX.

III.   Other Relief Requested

a.   Rule 12(e)

Jones argues that Doe's complaint lacks specificity and engages in group pleading. R. 51 at pp. 9–10. As such, he requests that Doe file a 12(e) statement. *See* Fed. R. Civ. P. 12(e) ("A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that

the party cannot reasonably prepare a response."). The complaint plausibly states claims for the reasons discussed. No further clarification is necessary.

b. Rule 12(f)

Jones argues that the allegation that he uploaded intimate content to OnlyFans for financial gain should be stricken under Rule 12(f) because it is baseless and inflammatory. R. 51 at pp. 7–8; *see* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). Motions to strike are generally disfavored, and courts will not strike matter from a complaint unless it is clear that it can have no possible bearing on the matter of the litigation. *Anderson v. Bd. of Educ. of City of Chi.*, 169 F. Supp. 2d 864, 867–68 (N.D. Ill. 2001); *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). The Court declines to strike this allegation because Defendant fails to demonstrate that the allegation is unrelated to this suit. *See Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992) (stating allegations in pleadings may be stricken if they bear "no possible relation to the controversy"). Here, Jones does not even argue that the allegation has no possible bearing on the litigation, merely that it is speculative. But Doe adequately pleads that Jones repeatedly disclosed videos of her to multiple friends and that he had an OnlyFans account he discussed with those same friends.

Jones further asserts that a screenshot of the Trio group chat in which he mentions that his OnlyFans account was "banned" contradicts this allegation. R. 51 at p. 8. But the screenshot showing that Jones was banned from OnlyFans does not

28

contradict Doe's allegation. Indeed, the screenshot acknowledges that Jones had an OnlyFans account and it raises the possibility that Jones violated the terms of the website thus causing the ban. The Court can reasonably infer that Jones disclosed videos of Doe on OnlyFans, and Doe is entitled to seek discovery on the matter. Jones is, of course, free to deny this allegation in his answer. If Doe's allegation turns out to be unfounded, Jones may revisit the issue in a motion for summary judgment or motion in limine at trial.

Jones additionally argues that the allegation is prejudicial because it is scandalous, but fails to explain how it is any more prejudicial than the allegation that he disclosed intimate videos to a group chat of his friends. Just because an allegation paints defendant in a negative light, that alone does not make it prejudicial. *See Wilkins v. City of Chicago*, 736 F. Supp. 3d 616, 626 (N.D. Ill. 2024) ("Although some of the material may seem unduly prejudicial, here [d]efendants have not met their burden to demonstrate that the allegations are so devoid of merit, unworthy of consideration, and have no possible relation to the controversy that the Court should employ the drastic remedy of striking the allegations."); *see also Mishra v. Tandon*, No. 12 C 50390, 2013 WL 887681, at *4 (N.D. Ill. Mar. 8, 2013) ("[W]here the allegations are relevant to the plaintiff's claims or request for relief, then the material is not subject to being stricken even if it is potentially embarrassing."). Jones's Rule 12(f) request is denied.

    c.  Service of Process

Corcoran-Sipe moves to quash service of process pursuant to Rule 12(b)(5) on the ground that he was never personally served. R. 47 at pp. 3–5; *see* Fed. R. Civ. P. 12(b)(5). Plaintiff alleges that Corcoran-Sipe was personally served at his home address on January 5, 2026 at 3:15 pm and has submitted to the Court an affidavit of the special process server attesting as such. R. 62 at pp. 22–23; R. 43. "A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence." *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) (citation omitted). In response, Corcoran-Sipe filed an affidavit stating that he was not at home at the time of service and was driving between work sites. R. 47-1. When a defendant's affidavit contradicts that of the process server, an evidentiary hearing is required to resolve the disputed factual issue. *Durukan America, LLC v. Rain Trading, Inc.*, 787 F.3d 1161, 1164 (7th Cir. 2015). Therefore, a determination cannot be rendered at this time, and the Court will schedule an evidentiary hearing.

## Conclusion

For the foregoing reasons, the Court denies Jones's motion; denies Sarnello's motion; grants Alvarez's motion as to Counts I–XV and denies it as to all other counts; grants Corcoran-Sipe's motion as to Counts I–XV and denies it as to all other counts; and grants Jones Sr.'s and Jennifer's motion. Therefore, all claims may proceed against Jones and Sarnello. The intrusion upon seclusion and intentional infliction of emotional distress claims may proceed against Alvarez and Corcoran-Sipe. The Homeowners are dismissed from the case. If Doe believes she can cure any of the deficiencies identified by the Court, she may file an amended complaint by August

24, 2026. Doe should carefully consider Rule 11(b) if she intends to amend her complaint as to the Homeowners. *See* Fed. R. Civ. P. 11(b). Suing individuals because they have a homeowner's insurance policy or are collectible defendants is not a proper purpose for a lawsuit.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: August 3, 2026